KAEDIAN LLP
NANNINA L. ANGIONI (SBN 238052)
nangioni@kaedianllp.com
2029 Century Park East, Suite 400
Los Angeles, CA 90067
Telephone: (310) 893-3372
Facsimile: (310) 893-3191

Attorneys for Plaintiff,
YAYYO, INC., a Delaware corporation

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YAYYO, INC. a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>HURST CAPITAL, LLLP, a limited liability limited partnership, ZACH HURST an individual, AUSTIN HURST, an individual, RYAN O'CONNOR, an individual, SCOTT CARL EDWARDS, an individual, ROBERT LISIESCKI, an individual, CHRISTOPHER JOHN GILBERT, an individual, JOSEPH ANDREINI III, an individual, and JOSEPH HOFFMAN, an individual, and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No:<br><br>**COMPLAINT FOR:**<br><br>**(1) FRAUD;**<br>**(2) FRAUDULENT INDUCEMENT;**<br>**(3) FRAUDULENT CONCEALMENT;**<br>**(4) NEGLIGENT MISREPRESENTATION;**<br>**(5) UNFAIR BUSINESS PRACTICES;**<br>**(6) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS;**<br>**(7) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS;**<br>**(8) NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS; AND**<br>**(9) CONVERSION**<br><br>**[DEMAND FOR JURY TRIAL AND PUNITIVE DAMAGES]** |

Plaintiff YayYo, Inc., a Delaware corporation, with its principal place of business in Los Angeles, California, hereby complains and alleges as follows:

# I.

## THE PARTIES

1.     Plaintiff YayYo, Inc. is a Delaware corporation, converted to this entity from YayYo, LLC, a Delaware limited liability company (hereafter "YayYo").  At all times relevant to this Complaint, YayYo was, a business entity registered by and under the laws of the State of Delaware.  YayYo's principal place of business is in Los Angeles, California.

2.     Hurst Capital, LLLP ("Hurst Capital") was, at all times relevant to this Complaint, a limited liability limited partnership registered by and under the laws of the State of Florida.  In Florida public filings, Hurst Capital has identified its principal place of business as being located at 1771 Ringling Blvd., Unit 1007, Sarasota, Florida 34236.  At the time of filing this Complaint, Hurst Capital's public website lists its business address as 1661 Ringling Blvd., Suite 3986, Sarasota, Florida, 34230.  On information and belief, YayYo alleges that Hurst Capital is a private equity firm, investing in companies predominantly in the technology and consumer goods sectors. During the summer of 2016, YayYo hired Hurst Capital to develop, create, launch, and run its mobile applications and website for consumer use, business development, and marketing.  To date, YayYo has paid Hurst Capital approximately $76,802 for these services despite the fact that YayYo has yet to deliver usable work product as promised.

3.     Austin Hurst ("Austin") is, and at all times relevant to this Complaint was, an individual stated residing in Las Vegas, Nevada and in various cities throughout Florida.   Austin co-founded Hurst Capital with his twin brother, defendant Zach Hurst, and serves as its Managing General Partner.  During 2016, Austin made fraudulent representations to YayYo in order to induce it to enter into a deal with Hurst Capital. Thereafter, Austin continued to make fraudulent representations to YayYo in order to persuade YayYo to pay hundreds of thousands of dollars for work that was either never

COMPLAINT FOR DAMAGES

completed or incapable of being performed as Austin represented.  On information and belief, Austin conspired with his co-Defendants in this action to defraud YayYo and to steal and/or convert approximately $800,000 for Defendants' collective personal gain and benefit.

3.     Zach Hurst ("Zach") is, and at all times relevant to this Complaint was an individual stated residing in Las Vegas, Nevada and in various cities throughout Florida.  Zach co-founded Hurst Capital with his twin brother, Austin, and serves as Hurst Capital's Managing Partner.  During 2016, Zach made fraudulent representations to YayYo in order to induce it to enter into a deal with Hurst Capital.  Thereafter, Zach continued to make fraudulent representations to YayYo in order to persuade YayYo to pay hundreds of thousands of dollars for work that was either never completed or incapable of being performed as Zack represented.  On information and belief, Zach conspired with his co-Defendants in this action to defraud YayYo and to steal and/or convert approximately $800,000 for Defendants' collective personal gain and benefit.

4.     Defendant Ryan Patrick O'Connor ("O'Connor") is, and at all times relevant to this Complaint was, an individual residing in the State of Florida.  During 2016, YayYo hired O'Connor, as an independent contractor, upon Hurst Capital's, Austin's, and Zach's advice and direction.  O'Connor was engaged to provide technology development and programming services in connection with planning, building, and launching YayYo's mobile applications and website.  To date, YayYo has paid O'Connor approximately $154,820 for his services.  On information and belief, O'Connor conspired with his co-Defendants in this action to defraud YayYo and steal and/or convert approximately $800,000 for Defendants' collective personal gain and benefit.

5.     Defendant Scott Carl Edwards ("Edwards") is, and at all times relevant to this Complaint was, an individual residing in the State of Oregon.  During 2016, YayYo hired Edwards, as an independent contractor, upon Hurst Capital's, Austin's, and Zach's advice and direction.  Edwards was engaged to provide technology development

and programming services in connection with planning, building, and launching YayYo's mobile applications and website.  To date, YayYo has paid Edwards approximately $17,550 for his services.  On information and belief, Edwards conspired with his co-Defendants in this action to defraud YayYo and steal and/or convert approximately $800,000 for Defendants' collective personal gain and benefit.

6.    Defendant Robert Lisiescki ("Lisiescki") is, and at all times relevant to this Complaint was, an individual residing in the State of Florida.  During 2016, YayYo hired Lisiescki, as an independent contractor, upon Hurst Capital's, Austin's, and Zach's advice and direction.  Lisiescki was engaged to provide technology development and programming services in connection with planning, building, and launching YayYo's mobile applications and website.  To date, YayYo has paid Lisiescki approximately $60,605 for his services.  On information and belief, Lisiescki conspired with his co-Defendants in this action to defraud YayYo and steal and/or convert approximately $800,000 for Defendants' collective personal gain and benefit.

7.    Defendant Christopher John Gilbert ("Gilbert") is, and at all times relevant to this Complaint was, an individual residing in the State of Florida.  During 2016, YayYo hired Gilbert, as an independent contractor, upon Hurst Capital's, Austin's, and Zach's advice and direction.  Gilbert was engaged to provide technology development and programming services in connection with planning, building, and launching YayYo's mobile applications and website.  To date, YayYo has paid Gilbert approximately $51,250 for his services.  On information and belief, Gilbert conspired with his co-Defendants in this action to defraud YayYo and steal and/or convert approximately $800,000 for Defendants' collective personal gain and benefit.

8.    Defendant Joseph Andreini III ("Andreini") is, and at all times relevant to this Complaint was, an individual residing in the State of Florida.  During 2016, YayYo hired Andreini, as an independent contractor, upon Hurst Capital's, Austin's, and Zach's advice and direction.  Andreini was engaged to provide technology development and programming services in connection with planning, building, and launching

1    YayYo's mobile applications and website.  To date, YayYo has paid Andreini

2    approximately $13,000 for his services.  On information and belief, Andreini

3    conspired with his co-Defendants in this action to defraud YayYo and steal and/or convert

4    approximately $800,000 for Defendants' collective personal gain and benefit.

5         9.    Defendant Joseph Hoffman ("Hoffman") is, and at all times relevant to this

6    Complaint was, an individual residing in the State of Florida.  During 2016, YayYo

7    hired Hoffman, as an independent contractor, upon Hurst Capital's, Austin's, and

8    Zach's advice and direction.  Hoffman was engaged to provide technology development

9    and programming services in connection with planning, building, and launching

10   YayYo's mobile applications and website.  To date, YayYo has paid Hoffman

11   approximately $45,180 for his services.  On information and belief, Hoffman conspired

12   with his co-Defendants in this action to defraud YayYo and steal and/or convert

13   approximately $800,000 for Defendants' collective personal gain and benefit.

14        10.   The true names and capacities of Defendants sued herein as Does 1

15   through 25, inclusive, are unknown to YayYo who therefore sue such Defendants by

16   such fictitious names.  YayYo alleges that each fictitiously named Defendant acted or

17   failed to act in such a manner that each has contributed in proximately causing the

18   damages to YayYo as herein alleged.  YayYo will seek leave of Court to amend this

19   Complaint to set forth their true names and capacities when ascertained.

20                                        **II.**

21                          **ALTER EGO ALLEGATIONS**

22        11.   YayYo is informed and believes, and thereon alleges, that each of the

23   Defendants sued herein, including those named herein as Does, are the agents, servants,

24   employees, licensees, guarantees, invitees, or assignees of each other, and in doing the

25   things herein alleged acted within the course and scope of such agency, employment

26   guaranty, assignment, license, invitation and/or relationship and with the full knowledge

27   and consent of the remaining Defendants.

28

12.     YayYo alleges that Austin and Zach are, and at all times relevant to the Complaint were, Hurst Capital's alter egos.  YayYo is informed and believes, and on that basis alleges, that Austin and/or Zach have at all times exercised control and dominion over Hurst Capital, with a disregard for the separate legal status of these entities for the purpose of, among other things, defrauding YayYo, avoiding payments due to YayYo and other vendors and contractors, and otherwise accomplishing some other wrongful or inequitable purpose to YayYo's detriment.  YayYo is informed and believes and on that basis alleges that there was a comingling of funds or other assets, identical equitable ownership, inadequate capitalization, disregard of corporate formalities, and a lack of segregation of corporate records as among Austin, Zach, and Hurst Capital.

13.     Adherence to the fiction of the separate existence of Hurst Capital as a separate entity distinct from Austin and/or Zach, would permit an abuse of the corporate privilege and would sanction fraud and promote injustice.

## III.

## JURISDICTION AND VENUE

14.     This Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332 because YayYo is a residence of California and no other parties to this action also reside in California.  YayYo is the sole California citizen.  All Defendants reside in other states and/or are citizens of other states.  Because YayYo resides in a different state than Defendants and the amount in controversy exceeds $75,000, this action is properly before this Court.

15.     Pursuant to 28 U.S.C. §§ 1391, subdivision (b)(2) and (c)(2), venue is proper in this district because a substantial part of the events giving rise to this lawsuit occurred in this judicial district.  Further, venue is also proper in this court because Defendants have extensive contacts with, and conduct business within this judicial district and have caused YayYo to sustain damages, as described herein.

## IV.

1

## **GENERAL ALLEGATIONS**

2      16.     During 2015, Ramy El-Batrawi ("Mr. El-Batrawi") began developing an

3  idea for a mobile application and website that offered customers a new way to interface

4  with ride-sharing and on-demand driving services.  He envisioned a product that

5  allowed customers to compare available pricing, real-time, offered by various driving

6  and ride-sharing services and to then book their trip through his product.  Mr. El-

7  Batrawi also envisioned other product safety features and benefits that customers would

8  enjoy by booking through and using his service.

9      17.     Mr. El-Batrawi established YayYo as the entity through which he would

10  bring the idea to market.  Mr. El-Batrawi had no prior substantive experience in the

11  technology or software industries.  During June of 2016, he began researching

12  companies YayYo could hire to create the mobile application and website he

13  envisioned.  One of his contacts recommended that he meet with Austin and Zach of

14  Hurst Capital.  The contact indicated that Austin and Zach had extensive experience in

15  the software and technology industries and touted their successful history launching

16  various mobile applications and technology-based consumer products.  Mr. El-Batrawi

17  therefore agreed to a meeting.

18      18.     During mid-June 2016, Mr. El-Batrawi, acting on YayYo's behalf, met

19  with Austin, who was representing Hurst Capital, at the W Hotel in Hollywood,

20  California.  During this meeting, Mr. El-Batrawi shared his idea and explained that

21  YayYo was looking to hire a company that could build the mobile application and

22  website needed to bring this idea to market.  Austin jumped at the chance.  Austin

23  claimed that through Hurst Capital, he and his brother had successfully built and

24  launched numerous mobile applications – such as Celebvidy.  Austin spoke highly of

25  his "team in Miami," insisted that he along with Zach and Hurst Capital were experts in

26  the field, and promised that they could build an application and website that performed

27  exactly how Mr. El-Batrawi envisioned.  Austin stated that Hurst Capital could

28  complete the project by September 1st and that it would cost YayYo $150,000 for both

1   the website and a mobile application that worked on both the Apple and Android

2   platforms.

3        19.    Within a couple of weeks of the first meeting, Mr. El-Batrawi had a second

4   meeting with Hurst Capital.  This time, both Austin and Zach attended.  They met at a

5   café in Beverly Hills, California and further discussed a potential deal between YayYo

6   and Hurst Capital in which Hurst Capital would create, develop, and finalize YayYo's

7   website and mobile applications.  Again, Austin represented that they (meaning he,

8   Zach, Hurst Capital and their "team") could unequivocally create a website and mobile

9   application that could accomplish exactly that Mr. El-Batrawi envisioned.  Zach also

10  spoke throughout the meeting, confirming too that Hurst Capital and their team were

11  experts in coding, developing software and programming.  Both Austin and Zach

12  represented that they were capable of developing code and programming that could

13  access real-time pricing offered by all ride-sharing and private ride services (such as

14  Uber and Lyft).  Austin and Zach specifically guaranteed that they had the know-how

15  and technology experience to accomplish the specific product features Mr. El-Batrawi

16  explained.  Austin and Zach both also promised that they, through Hurst Capital, could

17  complete the project and that the website and application would be fully up to speed and

18  ready for final customer launch on September 1, 2016.  When discussing the cost,

19  Austin and Zach represented that the price would be somewhere between $150,000 to

20  $250,000.  They were clear that the cost would never exceed $250,000.

21       20.    Soon thereafter, Austin and Zach insisted that Mr. El-Batrawi meet their

22  team of developers and technology staff in Florida.  They claimed Mr. El-Batrawi

23  would be impressed with their team and that this meeting would solidify Hurst Capital

24  as the right company for YayYo's job.  Mr. El-Batrawi obliged their request and

25  traveled to Florida to meet Hurst Capital's team.  Mr. El-Batrawi met with Austin and

26  O'Connor at a restaurant around Orlando, Florida.  He spent time once again discussing

27  the intricacies of the product YayYo envisioned.  Mr. El-Batrawi specifically discussed

28  the fact that YayYo needed to be able to access real-time, accurate pricing options

available to the public via all ride-sharing and private ride applications so that they could offer these prices to the consumer.  Mr. El-Batrawi emphasized that the pricing needed to be correct, and updated to reflect exactly what prices and options were available to a customer, at any given time, for any ride sought.  Mr. El-Batrawi also discussed that YayYo's product needed to interface with these ride-sharing and private ride applications (such as Uber and Lyft) so that its customers could book rides with these carriers through YayYo's application.  Austin emphatically confirmed that Hurst Capital's team absolutely could accomplish these objectives.  O'Connor also specifically represented that he, along with Hurst Capitals' "team" could accomplish these objectives.  Austin and O'Connor discussed various technology avenues available to achieve these product features.  They touted their experience in this industry and insisted these were completely accomplishable objections.  Never once did Austin, Zach, or O'Connor ever state – verbally or in writing – that it would be impossible for them to build the product YayYo wanted to bring to market.  To the contrary, they assured Mr. El-Batrawi that they could make YayYo's vision a reality – and that they could do so by September 1st for no more than $250,000.

21.    Following these meetings, in reliance on Austin's, Zach's, and O'Connor's express representations, YayYo entered into an agreement with Hurst Capital to build YayYo's website and mobile applications and to have both fully complete and operational by September 1, 2016, in exchange for compensation not to exceed $250,000.

22.    YayYo relied on Austin's, Zach's and O'Connor's representations to its detriment.  Among other things, YayYo solicited funding from various investors, spent $500,000+ on marketing materials and promotional spots, operations and made deals with various investors and third parties to raise further capital and generate market interest in YayYo's product.  Unfortunately for YayYo, it turned out that Austin's, Zach's, and O'Connor's representations were false, that it was impossible for Hurst

COMPLAINT FOR DAMAGES

Capital to provide the deliverables as promised, and that Defendants were conspiring all along to defraud YayYo to the tune of $800,000, all for their personal gain and benefit.

23.    After YayYo hired Hurst Capital and Hurst Capital's "team" – which was comprised of Defendants – YayYo learned that they had been the victim of a bait and switch.  It turned out that Defendants were utterly incapable of providing the deliverables they promised.  Despite Defendants' representations and proclamations to the contrary, it was actually impossible for them to access real-time, continuously updated pricing from available ride-sharing and private-ride services in the area.  This was the key component of YayYo's product it.  Without it, the product was useless.  Defendants were also far from the experts they claimed to be in the technology and software industries. They created a website that was fraught with errors and bugs, so much so that YayYo had to hire a new company to completely retool the website so that it functioned properly.  Defendants' work product on the mobile applications was even more useless.

24.    Over the course of July to October 2016, Defendants continued to insist that YayYo pay more and more money in order to cover the cost of hiring additional engineers.  Defendants claimed that they needed to hire more and/or different people to provide the product they initially promised to deliver on September 1, 2016 and for no more than $250,000.  Defendants missed their deliverable deadline and forced YayYo to pay it an additional $550,000 through nonstop invoices for additional engineers and services it insisted were necessary to complete the application.

25.    Some five months and $800,000 later, YayYo realized it had been duped.  Defendants still did not have a functioning product, the work they had claimed to complete was entirely useless and in the end, YayYo had absolutely nothing to show for the time and money it spent relying on Defendants' representations.  YayYo ultimately had to hire a new team of experts to build its product from scratch.

26.    To date, YayYo is still recovering from the damages Defendants' caused.  Its product launch has been delayed.  It has lost out on millions of dollars in funding

and capital investments due to Defendants' shortcomings.  It has lost out on other viable income generating opportunities because it did not have a working product by September 1st as Defendants guaranteed.  YayYo suffered additional out of pocket losses in increased costs, wasted opportunities, and money spent on marketing and launch tasks.

27.     To date, YayYo is still picking up the pieces of Defendants' destruction. YayYo is undertaking significant efforts to get its product back on track and salvage the vision it had for changing the way in which consumers travel.

**V.**

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**FRAUD**

**(Against all Defendants)**

28.     YayYo realleges and incorporates by reference all paragraphs alleged in this Complaint as though fully set forth herein.

29.     Defendants, through words and writings, have made several misrepresentations, nondisclosures, and/or concealment of material facts to YayYo with the intent of causing the company harm and obtaining a personal gain.  These misrepresentations were known, or through reasonable care, should have been known, by Defendants to be false and material and Defendants intended for these misrepresentations to mislead YayYo.  Defendants also intended that YayYo rely on their misrepresentations, which YayYo did to its detriment.

30.     Defendants made misrepresentations and promises regarding their capabilities, their technology and software experience, the total charges they would seek YayYo to pay, work they claim to have been performing, and the realistic options for creating the product YayYo desired.

31.     Defendants made these misrepresentations and promises without any intention of performing them.  Each of the promises and misrepresentations identified

herein were knowingly false when made.  Defendants knew that it was impossible to create a mobile application that had continuously updated, real-time pricing figures for ride-sharing and private ride services available on the market.  Defendants also knew that it was impossible to provide completed products by September 1, 2016, that their team lacked the experience and expertise to provide YayYo's requested deliverables, and that the entire project would cost less than $250,000.

32.     Defendants intended to induce and deceive YayYo for their own personal gain; to, among other things, obtain YayYo's money so that they could fund other personal projects and pay for perks and a lavish lifestyle.  Defendants knew that Mr. El-Batrawi was inexperienced in the technology and software industries and relied on this to take full advantage of YayYo.  Had Defendants been honest from the beginning, YayYo would have continued researching other development teams and/or modified its product from the beginning.  Had Defendants been honest, YayYo would not have paid them $800,000 to get nothing of use in return.

33.     YayYo was not aware that Defendants' representations and promises were false when they made them.  YayYo trusted Defendants and believed in their ability to fulfill the promises as made.  YayYo believed the representations Defendants made regarding their experience, credentials, know-how, and capability to deliver the products as YayYo described, on time, and within budget.

34.     YayYo justifiably relied on Defendants' representations when it agreed to enter into an agreement for their services and when it continued to pay them nearly $800,000 over the course of nearly five months.

35.     As a result of Defendants' fraudulent representations, made to induce YayYo to take action in reliance thereon, YayYo sustained significant monetary damages of at least $1.2 million including, but not limited to, YayYo's out of pocket loss, monies paid to Defendants, lost economic benefits, lost funding, and reliance damages.  YayYo is therefore entitled to seek damages in an amount to be proven at trial.

36. Moreover, Defendants' conduct was malicious, intentional, and outrageous, and constituted a willful and wanton disregard for YayYo's rights in that Defendants schemed, planned, and perpetrated a bait and switch scam as alleged herein above. Defendants' conduct was specifically directed at YayYo, with an aim toward draining the company of every dollar possible for Defendants' own personal gain and benefit. Punitive damages, in an amount sufficient to punish Defendants and discourage them from engaging in this type of conduct in the future, are warranted.

## SECOND CLAIM FOR RELIEF

### FRAUDULENT INDUCEMENT

**(Against all Defendants)**

37. YayYo realleges and incorporates by reference all paragraphs alleged in this Complaint as though fully set forth herein.

38. Defendants fraudulently induced YayYo to hire Defendants and engage their services to build, develop, and launch YayYo's product despite the fact that Defendants were utterly incapable of performing as promised and providing the specific deliverables YayYo requested. Defendants made misrepresentations and promises regarding their capabilities, their technology and software experience, the total charges they would seek YayYo to pay, work they claim to have been performing, and the realistic options for creating the product YayYo desired.

39. Defendants made these misrepresentations and promises without any intention of performing them. Each of the promises and misrepresentations identified herein were knowingly false when made. Defendants knew that it was impossible to create a mobile application that had continuously updated, real-time pricing figures for ride-sharing and private ride services available on the market. Defendants also knew that it was impossible to provide completed products by September 1, 2016, that their team lacked the experience and expertise to provide YayYo's requested deliverables, and that the entire project would cost less than $250,000.

40.     Defendants intended to induce and deceive YayYo for their own personal gain; to, among other things, obtain YayYo's money so that they could fund other personal projects and pay for perks and a lavish lifestyle.  Defendants knew that Mr. El-Batrawi was inexperienced in the technology and software industries and relied on this to take full advantage of YayYo.  Had Defendants been honest from the beginning, YayYo would have continued researching other development teams, would have never hired Defendants, and/or modified its product from the beginning.  Had Defendants been honest, YayYo would not have paid Defendants $800,000.

41.     YayYo was not aware that Defendants' representations and promises were false when they made them.  YayYo trusted Defendants and believed in their ability to fulfill the promises as made.  YayYo believed the representations Defendants made regarding their experience, credentials, know-how, and capability to deliver the products as YayYo described, on time, and within budget.

42.     YayYo justifiably relied on Defendants' representations when it agreed to enter into an agreement for their services and when it continued to pay them nearly $800,000 over the course of nearly five months.

43.     As a result of Defendants' fraudulent representations, made to induce YayYo to take action in reliance thereon, YayYo sustained significant monetary damages of at least $1.2 million including, but not limited to, YayYo's out of pocket loss, monies paid to Defendants, lost economic benefits, lost funding, and reliance damages.  YayYo is therefore entitled to seek damages in an amount to be proven at trial.

44.     Moreover, Defendants' conduct was malicious, intentional, and outrageous, and constituted a willful and wanton disregard for YayYo's rights in that Defendants schemed, planned, and perpetrated a bait and switch scam as alleged herein above.  Defendants' conduct was specifically directed at YayYo, with an aim toward draining the company of every dollar possible for Defendants' own personal gain and

benefit.  Punitive damages, in an amount sufficient to punish Defendants and discourage them from engaging in this type of conduct in the future, are warranted.

## THIRD CLAIM FOR RELIEF

### FRAUDULENT CONCEALMENT

#### (Against all Defendants)

45.    YayYo realleges and incorporates by reference all paragraphs alleged in this Complaint as though fully set forth herein.

46.    Defendants fraudulently concealed certain facts from YayYo in order to defraud the company and bilk them of $800,000 in payments.  Specifically, Defendants concealed the fact that it was impossible for them to obtain continuously updated, real-time information about pricing being offered by various ride-sharing and private ride companies on any given day and time.  Defendants concealed, in essence, that they could never provide YayYo with the key deliverable – the key component to the product YayYo was created to develop and take to market.  Defendants also concealed the truth about their experience and abilities when it came to technology and application design and construction.  Defendants also knew that it was impossible to provide completed products by September 1, 2016, that their team lacked the experience and expertise to provide YayYo's requested deliverables, and that the entire project would cost less than $250,000.

47.    Defendants concealed these facts from YayYo, despite their knowing the truth all along.

48.    Defendants concealed these facts so that YayYo would enter into an agreement with them and pay them $800,000 over the course of five months. Defendants undertook these actions for their own personal gain; to, among other things, obtain money so that they could fund other personal projects and pay for perks and a lavish lifestyle.  Defendants knew that Mr. El-Batrawi was inexperienced in the technology and software industries and relied on this to take full advantage of YayYo. Had Defendants been honest and forthcoming from the beginning, YayYo would have

continued researching other development teams and/or modified its product from the beginning. YayYo would have never hired Defendants had Defendants not concealed these material facts, nor would YayYo have paid them $800,000.

49. YayYo was not aware that Defendants were concealing material facts. YayYo trusted Defendants and believed that they were being honest and forthright in their communications. YayYo justifiably relied on Defendants' representations when it agreed to enter into an agreement for their services and when it continued to pay Defendants nearly $800,000 over the course of nearly five months.

50. As a result of Defendants' fraudulent concealment, YayYo sustained significant monetary damages of at least $1.2 million including, but not limited to, YayYo's out of pocket loss, monies paid to Defendants, lost economic benefits, lost funding, and reliance damages. YayYo is therefore entitled to seek damages in an amount to be proven at trial.

51. Moreover, Defendants' conduct was malicious, intentional, and outrageous, and constituted a willful and wanton disregard for YayYo's rights in that Defendants schemed, planned, and perpetrated a bait and switch scam as alleged herein above. Defendants' conduct was specifically directed at YayYo, with an aim toward draining the company of every dollar possible for Defendants' own personal gain and benefit. Punitive damages, in an amount sufficient to punish Defendants and discourage them from engaging in this type of conduct in the future, are warranted.

## FOURTH CLAIM FOR RELIEF

### NEGLIGENT MISREPRESENTATION

#### (Against all Defendants)

52. YayYo realleges and incorporates by reference all paragraphs alleged in this Complaint as though fully set forth herein.

53. As alleged herein, Defendants made several misrepresentations to YayYo, intending to cause the company harm. Among other things, Defendants falsely represented that they could and would produce a website and mobile application that

met YayYo's product requirements, that they would complete the work by September 1, 2016, that the project would not cost more than $250,000, that they would provide YayYo with a financial model, that the money YayYo provided to Hurst Capital was being used exclusively to pay its tech engineers, and that the work represented on invoices Hurst Capital provided was in fact completed.

54.    Defendants did not have any reasonable grounds to believe that their misrepresentations were true at the time they made them.  Defendants' conduct throughout the course of the engagement demonstrates that they never intended to uphold the promises made to induce YayYo to enter into an agreement with Hurst Capital in the first place, and to thereafter continue making payments for work allegedly performed

55.    Defendants made these misrepresentations intending that YayYo rely on them.  YayYo did rely on Defendants' representations and this reliance was a substantial factor in causing its harm.

56.    YayYo was not aware that Defendants' representations and promises were false when they made them.  YayYo trusted Defendants and believed in their ability to fulfill the promises as made.  YayYo believed the representations Defendants made regarding their experience, credentials, know-how, and capability to deliver the products as YayYo described, on time, and within budget.

57.    YayYo justifiably relied on Defendants' representations when it agreed to enter into an agreement for their services and when it continued to pay them nearly $800,000 over the course of nearly five months.

58.    As a result of Defendants' fraudulent representations, made to induce YayYo to take action in reliance thereon, YayYo sustained significant monetary damages of at least $1.2 million including, but not limited to, YayYo's out of pocket loss, monies paid to Defendants, lost economic benefits, lost funding, and reliance damages.  YayYo is therefore entitled to seek damages in an amount to be proven at trial.

COMPLAINT FOR DAMAGES

59.    Moreover, Defendants' conduct was malicious, intentional, and outrageous, and constituted a willful and wanton disregard for YayYo's rights in that Defendants schemed, planned, and perpetrated a bait and switch scam as alleged herein above.  Defendants' conduct was specifically directed at YayYo, with an aim toward draining the company of every dollar possible for Defendants' own personal gain and benefit.  Punitive damages, in an amount sufficient to punish Defendants and discourage them from engaging in this type of conduct in the future, are warranted.

**FIFTH CLAIM FOR RELIEF**

**UNFAIR BUSINESS PRACTICES**

**(Against all Defendants)**

60.    YayYo realleges and incorporates by reference all paragraphs alleged in this Complaint as though fully set forth herein.

61.    Business and Professions Code section 17200 protects competitors from fraudulent, illegal, and unfair business practices.  Specifically, this section defines "unfair competition" to "include any unlawful, unfair or fraudulent business act or practice" including any "unfair, deceptive, untrue or misleading advertising."  (Bus. & Prof. Code, § 17200.)

62.    Defendants engaged in unfair business practices by, among other things, engaging in the fraudulent acts described herein above.  Defendants also engaged in unfair business practices with their deceptive, untrue, and misleading advertising of its services and capabilities in the technology and application/website development industries.  Despite Defendants' advertising of their expertise and experience, they were incapable of providing the promised deliverables.  Defendants' work product was subpar in some respects and, completely useless in others.

63.    After spending $800,000 on Defendants' services, YayYo was left with a defective website and a purported mobile application that failed in its most basic functions, could not access continuous real-time pricing for any ride-sharing or private

ride services.  YayYo had to hire a new team of contractors to retool its website and build the mobile applications from scratch.

64.     Defendants engaged in these unfair business practices and unfair competition actions all to YayYo's detriment.  As a result of Defendants' fraudulent representations, made to induce YayYo to take action in reliance thereon, YayYo sustained significant monetary damages of at least $1.2 million including, but not limited to, YayYo's out of pocket loss, monies paid to Defendants, lost economic benefits, lost funding, and reliance damages.  YayYo is therefore entitled to seek damages in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

### (Against all Defendants)

65.     YayYo realleges and incorporates by reference all paragraphs alleged in this Complaint as though fully set forth herein.

66.     YayYo realleges and incorporates by reference all paragraphs alleged in this Complaint as though fully set forth herein.

67.     During the June to October 2016 time period, YayYo was in various contractual relationships with various investors, marketing agencies, and third parties all aimed at developing, marketing, and launching YayYo's product.  YayYo stood to generate revenue, obtain funding, and gain an economic benefit through this relationships. Defendants knew of these economic relationships and intended to disrupt them.

68.     Defendants engaged in wrongful conduct by making misrepresentations to YayYo, failing to provide deliverables on the dates agreed, failing to provide some deliverables at all, and engaging in other fraudulent behavior as set forth herein above.

69.     Defendants' wrongful conduct disrupted YayYo's relationships with these third parties.

70.     YayYo was harmed as a result of Defendants' conduct.  Such harm includes lost funding opportunities, income, and other economic gain.

71.     Defendants' conduct was a substantial factor in causing YayYo's harm.

### SEVENTH CLAIM FOR RELIEF
### INTENTIONAL INTEFERENCE WITH PROSPECTIVE
### ECONOMIC RELATIONS
### (Against all Defendants)

72.     YayYo realleges and incorporates by reference all paragraphs alleged in this Complaint as though fully set forth herein.

73.     During the June to October 2016 time period, YayYo was in an economic relationship with various investors, marketing agencies, and third parties all aimed at developing, marketing, and launching YayYo's product.  YayYo stood to generate revenue, obtain funding, and gain an economic benefit through this relationships. Defendants knew of these economic relationships and intended to disrupt them.

74.     Defendants engaged in wrongful conduct by making misrepresentations to YayYo, failing to provide deliverables on the dates agreed, failing to provide some deliverables at all, and engaging in other fraudulent behavior as set forth herein above.

75.     Defendants' wrongful conduct disrupted YayYo's relationships with these third parties.

76.     YayYo was harmed as a result of Defendants' conduct.  Such harm includes lost funding opportunities, income, and other economic gain.

77.     Defendants' conduct was a substantial factor in causing YayYo's harm.

### EIGHTH CLAIM FOR RELIEF
### NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC
### RELATIONS
### (Against all Defendants)

78.     YayYo realleges and incorporates by reference all paragraphs alleged in this Complaint as though fully set forth herein.

79.    During the June to October 2016 time period, YayYo was in an economic relationship with various investors, marketing agencies, and third parties all aimed at developing, marketing, and launching YayYo's product.  YayYo stood to generate revenue, obtain funding, and gain an economic benefit through these relationships.

80.    Defendants knew or should have known of these economic relationships. Defendants knew or should have known that these relationships would be disrupted if they did not act with reasonable care.  Defendants failed to act with reasonable care.

81.    Defendants engaged in wrongful conduct by making misrepresentations to YayYo, failing to provide deliverables on the dates agreed, failing to provide some deliverables at all, and engaging in other fraudulent behavior as set forth herein above.

82.    Defendants' wrongful conduct disrupted YayYo's relationships with these companies.

83.    YayYo was harmed as a result of Defendants' conduct.  Such harm includes lost funding opportunities, income, and other economic gain.

84.    Defendants' conduct was a substantial factor in causing YayYo's harm.

### NINTH CLAIM FOR RELIEF

### CONVERSION

### (Against all Defendants)

85.    YayYo realleges and incorporates by reference all paragraphs alleged in this Complaint as though fully set forth herein.

86.    Defendants obtained YayYo's funds, in the amounts set forth herein above, despite not having completed the work they represented having done.  Defendants intentionally and substantially interfered with YayYo's right to possess these funds by tendering fraudulent invoicing for work not performed.  Despite YayYo's requests for reimbursement of monies wrongfully tendered, to date, Defendants have not returned YayYo's money.

87.    YayYo did not consent to Defendants' conversion of its funds.

88.    As a result of Defendants' wrongful conversion of YayYo's funds, the company has sustained economic harm.

## VI.

## <u>PRAYER FOR RELIEF</u>

### (As to All Claims for Relief)

YayYo prays for the following as to each claim for relief alleged herein:

1.    For damages, of at least $1.2 million, to compensate YayYo for the out of pocket expenses it incurred, money paid for services not performed, and reliance damages;

2.    For damages of at least $100 million to compensate YayYo for the lost opportunities and prospective economic benefits YayYo suffered as a result of Defendants' wrongful conduct;

3.    For additional compensatory damages in an amount according to proof at the time of trial;

4.    For punitive damages, in an amount sufficient to punish Defendants and deter them from engaging in such wrongful conduct in the future, in an amount according to proof but estimated to exceed $200 million;

5.    For prejudgment interest and post-judgment interest according to law;

6.    For reasonable attorneys' fees;

7.    For costs of suit incurred in this action; and

8.    For such other and further relief as the Court deems proper and just.


Dated:  November 21, 2016              KAEDIAN LLP

_____
NANNINA L. ANGIONI
Attorneys for Plaintiff,
YAYYO, INC., a Delaware corporation

COMPLAINT FOR DAMAGES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VII.

## **DEMAND FOR JURY TRIAL**

YayYo hereby demands a jury trial on all causes of action pending before this Court in this matter.

Dated:  November 21, 2016          KAEDIAN LLP

_____
NANNINA L. ANGIONI
Attorneys for Plaintiff,
YAYYO, INC., a Delaware corporation