**RAINES FELDMAN LLP**
Sonia Y. Lee, Esq. (SBN. 191837)
slee@raineslaw.com
9720 Wilshire Boulevard, 5th Floor
Beverly Hills, California 90212
Telephone: (310) 440-4100
Facsimile: (310) 691-1943

**PIKE & LUSTIG, LLP**
Michael J. Pike, Esq. (Fla. Bar No. 617296)
*Admitted Prohac Vice*
mike@turnpikelaw.comDaniel Lustig, Esq. (Fla. Bar No. 59225)
*Admitted Prohac Vice*
daniel@turnpikelaw.com
2465 Mercer Ave, Suite 204
West Palm Beach, FL 33401
Telephone: (561) 855-7585
Facsimile: (561) 855-7710

Attorneys for Defendant Ryan O'Connor

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| YAYYO, INC. a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>HURST CAPITAL, LLP., *et al.*,<br>Defendants | Case No. 2:16-cv-08653-CBM-E<br><br>[Assigned to: Hon. Terry J. Hatter, Jr, United States District Judge]<br><br>**DEFENDANT RYAN O'CONNOR'S NOTICE OF MOTION AND MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION; DECLARATION OF RYAN O'CONNOR IN SUPPORT THEREOF**<br><br>[(Proposed) Order filed concurrently herewith]<br><br>Date: February 27, 2017<br>Time: 10:00 a.m.<br>Crtm.: 9B |

# NOTICE OF MOTION

**TO ALL PARTIES AND TO THEIR ATTORNEY(S) OF RECORD:**

**PLEASE TAKE NOTICE THAT** on February 27, 2017 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 9B of the above-entitled Court, located at 350 W. 1st Street, Los Angeles, California 90012, defendant Ryan O'Connor ("O'Connor") will and hereby does move this Court for an Order (1) compelling plaintiff YayYo, Inc. ("YayYo") to arbitrate its claims and (2) staying this action as to all causes of action asserted against O'Connor pending arbitration.

This Motion is based on 9 U.S.C. § 4 and is made on the grounds that each of the claims asserted against O'Connor must be arbitrated pursuant to a written agreement entered into by and between YayYo and O'Connor. This Motion is based on this Notice of Motion and Motion to Compel Arbitration of Claims, the accompanying memorandum of points and authorities and the declaration of Ryan O'Connor filed herewith, the complete file and records in this action, and any other evidence and argument which the Court may consider at the time of the hearing of this matter.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on January 31, 2017.

Dated: January 31, 2017

RAINES FELDMAN LLP

By: */s/ Sonia Y. Lee*

Sonia Y. Lee
Attorneys for Defendant Ryan O'Connor

Dated: January 31, 2017

PIKE & LUSTIG, LLP

By: */s/ Daniel Lustig*
Daniel Lustig
Admitted *Prohac-Vice*
Fla. Bar. No. 59225
Attorneys for Defendant Ryan O'Connor

By: */s/ Michael J. Pike*
Michael J. Pike
Admitted *Prohac-Vice*
Fla. Bar. No. 617296
Attorneys for Defendant Ryan O'Connor

## I. MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION.

Defendant Ryan O'Connor ("O'Connor"), by and through his undersigned attorneys and pursuant to 9 U.S.C. § 4, and the authority cited herein, files this, his Motion to Stay Proceedings and Compel Arbitration ("Motion") on the ground that each and every claim asserted against him by YayYo, Inc. is subject to a written arbitration provision, which is binding and enforceable.

In short, on or about July 5, 2016, YayYo and O'Connor entered into a written Independent Contractor Agreement ("Agreement") which contains the following broad arbitration provision:

> This Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to principles of conflicts of laws. The parties agree that **any and all disputes, claims or controversies arising out of or related to this Agreement shall be submitted for binding arbitration**. Unless the parties agree otherwise, any mediation and/or arbitration shall take place in the State of California, Los Angeles County, and shall be administered by, and pursuant to, the Commercial Arbitration Rules of the America Arbitration Association. The provisions of this section may be enforced in any court of competent jurisdiction. (O'Connor Decl., Ex. A, ¶ 15; emphasis added).

Notwithstanding the clear terms of the arbitration provision, on or about November 21, 2016, YayYo filed the instant complaint asserting claims against O'Connor directly arising out of the Agreement.

It is apparent that the contractual relationship between O'Connor and Yayyo is inextricably woven to the facts Yayyo claims as its basis for each claim alleged in the Complaint. In its Complaint, Yayyo alleges that Ramy El-Batrawi, Yayyo's representative, travelled to Florida to meet O'Connor and other named Defendants (Complaint, ¶ 20.) Further, Yayyo alleges that certain representations made during meetings that took place in Florida induced Yayyo to enter into the agreement, including the Agreement. (Complaint, ¶¶ 20-21.). Throughout the complaint, Yayyo links its damages to payments made under the various agreements, including O'Connor's. Certainly, each and every claim expressly rests on the contractual relationship existing between the parties, as evidenced by the following allegations:

> **FIRST, SECOND, FOURTH CLAIM**
>
> YayYo was not aware that Defendants' representations and promises were false when they made them. YayYo trusted Defendants and believed in their ability to fulfill the promises as made.
>
> YayYo believed the representations Defendants made regarding their experience, credentials, know-how, and capability to deliver the products as YayYo described, on time, and within budget.
>
> YayYo justifiably relied on Defendants' representations when it agreed to enter into an agreement for their services and when it continued to pay them nearly $800,000 over the course of nearly five months.

(Complaint, ¶¶ 33-35.)

**THIRD CLAIM**

YayYo would have never hired Defendants had Defendants not concealed these material facts, nor would YayYo have paid them $800,000.

YayYo was not aware that Defendants were concealing material facts. YayYo trusted Defendants and believed that they were being honest and forthright in their communications. YayYo justifiably relied on Defendants' representations when it agreed to enter into an agreement for their services and when it continued to pay Defendants nearly $800,000 over the course of nearly five months

(Complaint, ¶¶ 48-49.)

**FIFTH CLAIM**

After spending $800,000 on Defendants' services, YayYo was left with a defective website and a purported mobile application that failed in its most basic functions, could not access continuous real-time pricing for any ride-sharing or private ride services. YayYo had to hire a new team of contractors to retool its website and build the mobile applications from scratch.

(Complaint, ¶ 62-63.)

**SIXTH, SEVENTH CLAIM**

Defendants engaged in wrongful conduct by making misrepresentations to YayYo, failing to provide deliverables on the dates agreed, failing to provide some

> deliverables at all, and engaging in other fraudulent behavior as set forth herein above.
>
> Defendants' wrongful conduct disrupted YayYo's relationships with these third parties.
>
> (Complaint, ¶¶ 68-69, 74-75.)
>
> **EIGHTH CLAIM**
>
> Defendants engaged in wrongful conduct by making misrepresentations to YayYo, failing to provide deliverables on the dates agreed, failing to provide some deliverables at all, and engaging in other fraudulent behavior as set forth herein above.
>
> Defendants' wrongful conduct disrupted YayYo's relationships with these companies.
>
> (Complaint, ¶¶ 81-82.)
>
> **NINTH CLAIM**
>
> Defendants obtained YayYo's funds, in the amounts set forth herein above, despite not having completed the work they represented having done. Defendants intentionally and substantially interfered with YayYo's right to possess these funds by tendering fraudulent invoicing for work not performed. Despite YayYo's requests for reimbursement of monies wrongfully tendered, to date, Defendants have not returned YayYo's money.
>
> (Complaint, ¶ 86.)

Unequivocally, all of the claims, disputes or controversies at issue, at least as they relate to O'Connor, arise out of, or are related to the Agreement. An

elementary review of the Agreement establishes that this case does not belong in Federal Court. Accordingly, this matter must be stayed for arbitration to take place as agreed upon by the parties.

## II. LEGAL ARGUMENT.

The party seeking to compel arbitration has the burden under the Federal Arbitration Act ("FAA") to show "(1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Roe v. SFBSC Mgmt., LLC*, 656 F. App'x 828, 829 (9th Cir. 2016), *citing Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

### A. Valid Written Agreement to Arbitrate Must be Rigorously Enforced.

Written agreements to arbitrate a dispute "shall be valid, irrevocable, and enforceable." *See* 9 U.S.C. § 2. "Federal substantive law governs the question of arbitrability." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719-20 (9th Cir. 1999), *citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). A clear federal policy exists "in favor of arbitration." *Simula, supra*, 175 F.3d at 719-20. "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id., citing Moses H. Cone*, 460 U.S. at 24-25.

The standard for demonstrating arbitrability is not high. *Simula, supra*, 175 F.3d at 719-20. The FAA leaves "no place for the exercise of discretion by a district court, but instead mandates that district courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id., citing Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985). Arbitration agreements must be "rigorously enforced." *Id.*

The FAA provides for the enforcement of arbitration provisions in any contract "evidencing a transaction involving commerce." 9 U.S.C. § 2; *Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 200 (1956). The term "involving commerce"

is the functional equivalent of the more familiar term "affecting commerce," words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). To fall within the outer reaches of the Commerce Clause, the contract at issue must involve a party who was "working 'in' commerce," "producing goods for commerce," or "engaging in activity that affected commerce." *Elmore v. CVS Pharm., Inc.*, 2016 U.S. Dist. LEXIS 156481, at *6-7 (C.D.Cal. Nov. 9, 2016).

The Agreement was prepared by Yayyo for O'Connor to execute as an independent contractor. (O'Connor Decl., ¶ 5.) The contract at issue involved commerce, as Mr. El-Batrawi travelled to Florida, met O'Connor for the purpose of entering into the Agreement, and in fact, entered into the Agreement and paid O'Connor from California for work performed by O'Connor from Florida. *See, e.g.*, Complaint, ¶¶ 20-21. Therefore, the arbitration provision is enforceable under the FAA.

As stated by the Supreme Court in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. at 626 (1985), "any doubts concerning the scope of the right to arbitrate must be resolved in favor of arbitration." When ample facts lead to the conclusion that there was no good faith basis to proceed with the filing of a federal lawsuit, a claim is "objectively frivolous." *Peer v. Lewis*, 606 F.3d 1306, 1312-14 (11th Cir. 2010). Here, the lawsuit filed by Yayyo is objectively frivolous and now O'Connor is incurring the expense of Yayyo's refusal to arbitrate this matter, as required by its own Agreement. O'Connor is thus entitled to the entry of an order compelling arbitration as provided in the subject agreement. *See* 9 U.S.C. § 4.

**B. The Broad Arbitration Provision Covers all Claims Raised by Yayyo.**

"[T]he decision as to whether a contractual arbitration clause covers a particular dispute rests substantially on whether the clause in question is 'broad' or 'narrow.'" *Bono v. David*, 147 Cal. App. 4th 1055, 1064 (2007). In California, broadly worded arbitration clauses may extend to tort claims that may arise "under or from the contractual relationship." *Coast Plaza Doctors Hosp. v. Blue Cross of Cal*., 83 Cal. App. 4th 677, 686 (2000). Specifically, no requirement exists that a "cause of action arising out of a contractual dispute must be itself contractual. At most, the requirement is that the dispute must arise out of contract." *Id*., *citing Crofoot v. Blair Holdings Corp*., 119 Cal. App. 2d 156, 182 (1953). Here, in a shotgun pleading, Yayyo raises intentional tort, negligence and unfair business practices claims. Despite the various, yet apparently defective legal theories, all of the claims expressly arise out of the various agreements, as expressly alleged in each claim.

In *Simula*, the court held that the phrase "arising in connection with" in an arbitration clause has been consistently interpreted by this Circuit, and sister courts, broadly. 175 F.3d at 721. In fact, it was held that the language "arising in connection with" "reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Id*. In this case, the language of the agreement includes "any and all disputes, claims or controversies arising out of <u>or</u> related to this Agreement" requires a broad construction of the provision, as to enforce arbitration in connection with all controversies that arise or are related to the Agreement. In this case, the stay is required for arbitration to take place. As quoted above, the allegations of each claim raised in the complaint involve disputes arising out of or related to the Agreement.

In *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315 (4th Cir. 1988), the court held an arbitration provision "was sufficiently broad in scope to include claims for unfair trade practices, libel, and defamation." *Id*. Here, all of the claims alleged in the complaint discuss the contract, and either lack of performance or payment under the contract for a period of time as a basis to calculate damages. Thus, the nine claims raised in the Complaint are subject to arbitration as required by law and the provisions of the subject agreement.

## III. <u>CONCLUSION.</u>

For the foregoing reasons, O'Connor respectfully requests that the Court: (1) compel YayYo to arbitrate each and every claim asserted against O'Connor in this action; and (2) stay this proceeding as to O'Connor pending arbitration of such claims.

Dated: January 31, 2017 RAINES FELDMAN LLP

By: */s/ Sonia Y. Lee*
Sonia Y. Lee
Attorneys for Defendant Ryan O'Connor

Dated: January 31, 2017 PIKE & LUSTIG, LLP

By: */s/ Daniel Lustig*
Daniel Lustig
Admitted *Prohac-Vice*
Fla. Bar. No. 59225
Attorneys for Defendant Ryan O'Connor

By: */s/ Michael J. Pike*
Michael J. Pike
Admitted *Prohac-Vice*
Fla. Bar. No. 617296
Attorneys for Defendant Ryan O'Connor