SASSAN J. MASSERAT, SBN 231104
SMasserat@MasseratLaw.com
**MASSERAT LAW GROUP**
468 North Camden Drive, Second Floor
Beverly Hills, California 90210
Telephone: (310) 601-3034
Facsimile: (310) 943-2315

Attorneys for Plaintiff,
YAYYO, INC., a Delaware corporation

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| YAYYO,INC. a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>HURST CAPITAL, LLLP, a limited liability limited partnership, et al.,<br><br>Defendants. | Case No: 2:16-CV-08653-TJH-E<br>Assigned to Hon. Terry J. Hatter, Jr.<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT RYAN O'CONNOR'S MOTION TO COMPEL ARBITRATION.**<br><br>[Concurrently filed with Declarations of Sassan Masserat, Ramy El-Batrawi, and Ali Rashidifar, and Evidentiary Objections to Declaration of Ryan O'Connor.]<br><br>Date: February 27, 2017<br>Time: 10:00 a.m.<br>Crtm: 9b |

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff YAYYO, INC. ("Plaintiff" or "Yayyo") hereby submits this Memorandum of Points and Authorities in Opposition to Defendant RYAN O'CONNOR ("Defendant" or "Moving Party")'s Motion to Compel Arbitration and Stay Proceedings (the "Motion").

## I. INTRODUCTION

Moving Party improperly and unreasonably seeks to compel arbitration pursuant to a contract that is the fruit of the very fraud perpetrated upon Plaintiff by Moving Party – to resolve fraud claims **antecedent** to the formation of the contract itself. It is respectfully submitted that Moving Party should

not derive any benefit out of the misrepresentations and fraud that induced Plaintiff to enter into the very agreement that contains an arbitration clause (the "Agreement").

Of note, the Complaint does not include any breach of contract or related claims, nor is the Agreement alleged to be at the heart of the dispute between the parties.

## II. PROCEDURAL BACKGROUND

On November 21, 2016 Plaintiff filed suit against Moving Party and his co-conspirators, alleging fraudulent inducements, misrepresentation and conversion in connection with Plaintiff's hiring Moving Party, among others, to develop a mobile application (the "Complaint"). [Declaration of Ramy El-Batrawi ("Ramy Decl."), ¶ 3.] Moving Party was served on December 10, 2016. Upon Moving Party's last minute application to the Court, he was afforded until January 31, 2017 "to answer or otherwise response to the Complaint" [Docket 35]. [Declaration of Sassan Masserat ("Masserat Decl."), ¶¶ 3, 4.]

Without any substantive intention to engage in the statutory required "meet and confer" process, Moving Party then filed a last-minute Motion to Compel Arbitration on January 31, 2017 [Docket 50].

## III. FACTUAL ALLEGATIONS RELEVANT TO THE MOTION HEREIN

### A. Background leading to Execution of Agreement

In 2015 Plaintiff's founder Mr. Ramy El-Batrawi envisioned a product that would allow customers to compare available pricing, real-time, offered by various driving and ride-sharing services and to then book their trips through such product. This concept would be marketed via Plaintiff herein, i.e., YayYo. [Ramy Decl., ¶4.]

In his efforts to locate individuals and companies that could create the mobile application and website that he had envisioned, Mr. El-Batrawi met with Austin Hurst and Zach Hurst (the "Hurst Brothers"), of Hurst Capital LLLP[1]. In or about June 2016 the Hurst Brothers convinced Mr. El-Batrawi to hire them and their team, claiming that they and their team in Florida were experts in the field, and promising that they could build an application and website to achieve exactly Plaintiff's vision. [Ramy Decl., ¶5.]

[1] Of note, a default has been entered against the Hurst Brothers and Hurst Capital LLLP due to their failure to appear or file a responsive pleading in this action.

Shortly thereafter, the Hurst Brothers convinced Mr. El-Batrawi to travel to Florida, where in or about late June 2016 he met with Defendant, as a member of their "team", at a restaurant in Orlando, Florida. At this meeting, Mr. El-Batrawi and Defendant specifically discussed the fact that YayYo needed to be able to access real-time, accurate pricing options and all functionality available to the public via all ride-sharing and private ride applications so that they could offer these prices to the consumer who could then directly book the service. Mr. El-Batrawi specifically told Defendant that the product they were discussing needed to interface with these ride-sharing and private ride applications (such as Uber and Lyft) so that its customers could book rides with these carriers through YayYo's application. <u>Defendant specifically represented and promised that he could accomplish these objectives</u>. [Ramy Decl., ¶6.]

B. <u>The Execution of the Agreement and its Scope</u>

Following the above-mentioned meeting with Defendant, and <u>in reliance of Defendant's representations, inducements and promises</u>, Mr. El-Batrawi entered into an Independent Contractor Agreement (the "<u>Agreement</u>"), on behalf of Plaintiff. Under the Agreement, Defendant and his team were paid approximately $335,985. [Ramy Decl., ¶7.]

The Agreement, at the time it was negotiated and executed, was limited to encompass the provision and performance of certain services, as enumerated in Paragraph 4. In other words, it was not Plaintiff's intention, nor was it ever discussed with Defendant, that the arbitration clause within the Agreement would be applied to conduct that *preceded* the negotiation and execution of the Agreement. [Ramy Decl., ¶8.]

In effect, the Arbitration provision contained in the Agreement is inapplicable to the dispute herein, and further void and invalid because Defendant's representations, prior to entering into the Agreement, were false and fraudulent, and made with the intent to defraud Plaintiff, as alleged in the operative Complaint. [Ramy Decl., ¶9.]

Only after repeated requests for extensions and hundreds of thousands of dollars from Defendant, as well as the other named parties in this action, it became clear that Defendant's representations were false, as it is impossible for anyone to technically or legally provide real-time access to the ride-sharing and private ride applications, which would entail hacking into private and proprietary systems.

Essentially, even if a person were able to obtain such proprietary information and data, it would be tantamount to illegal hacking, which would subject the hacker and/or its principal to civil and criminal repercussions. Specifically, Defendant's representations had to be false, as the public information available could not develop the technical goals set forth for YayYo's application and any attempt to obtain proprietary or private data/information, such as real-time users' requests for service, would not be legal [Ramy Decl., ¶10; Declaration of Ali Rashidifar ("Rashidifar Decl."), ¶¶ 4-7.]

In sum, Plaintiff was fraudulently induced by Defendant's false promises and representations to enter into the Agreement [Ramy Decl., ¶11; Rashidifar Decl., ¶¶ 4-7], and Defendant should not now be allowed to deprive Plaintiff of its constitutional right to a jury by adducing that conduct preceding the execution of the Agreement falls under the purview of the Agreement's arbitration clause.

## IV. MOVING PARTY'S FAILURE TO COMPLY WITH LOCAL RULES IS FATAL

The Central District of California's Local Rules require, prior to the filing of any motion, a "meet and confer" process, "**preferably in person**", expressly requiring that such "conference shall take place **at least seven (7) days prior** to the filing of the motion. [Local Rule 7-3, emphasis added.] In this instance, Moving Party failed to comply with these mandatory requirements. [Masserat Decl., ¶ 5.]

For starters, Moving Party's counsel contacted Plaintiff's counsel via email on the very last day granted by the Court to Defendant to file his responsive pleading: on January 31, 2017, at approximately 12:38 p.m. PST, an email was sent to Plaintiff's counsel, demanding Plaintiff's agreement to arbitrate the claims vis-à-vis Defendant. [Masserat Decl., ¶ 6; Exhibit "A" thereto.]

Plaintiff's counsel, who was out of the office for a few days, replied that the issue would be discussed with Plaintiff, noting however that it should have been raised much earlier given the time afforded to Moving Party to answer the Complaint. [Masserat Decl., ¶ 7; Exhibit "B" thereto.]

*Less than 90 minutes later*, Moving Party filed the Motion before having received Plaintiff's decision on the issue [Docket 50]. It is evident that Moving Party's attempts to comply with Local Rule 7-3 were anything but genuine, and merely pro forma: Moving Party's counsel did not even attempt to arrange (or even propose) the "personal" conference as required by Local Rule 7-3, nor was Plaintiff extended the courtesy of a telephone call. Moving Party clearly planned to file the Motion at the last

minute, without substantive compliance with the Court's requirements – in spite of the fact that Local Rule 7-3 requires that the "meet and confer" take place "at least seven days prior to the filing of the motion". [Masserat Decl., ¶ 8, 9.]

Based on the above alone, this Honorable Court should deny the Motion in its entirety.

## V. LEGAL STANDARD APPLICABLE TO ARBITRATION

In ruling on an application to compel under the Federal Arbitration Act ("FAA"), the court may inquire only as to whether: (1) there is an agreement to arbitrate; (2) there are arbitrable claims; and (3) there has been a waiver of the right to arbitrate by the moving party or other defense to arbitration. Daisy Mgf. Co., Inc. v. NCR Corp. (8th Cir. 1994) 29 F3d 389, 392; *see* Chiron Corp. v. Ortho Diagnostic Systems, Inc. (9th Cir. 2000) 207 F3d 1126, 1130.

### A. Courts Have Discretion to Invalidate Arbitration Agreements Under Federal and California Law

Arbitration agreements are contracts. *See* Cal. Civ. Proc. Code ("C.C.P.") § 1281 ("A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.") When grounds "exist at law or in equity for the revocation of any contract," courts may decline to enforce such agreements. *See* Doctor's Assocs., Inc. v. Casarotto (1996) 517 U.S. 681, 683; Ferguson v. Countrywide Credit Indus., Inc. (9th Cir. 2002) 298 F.3d 778, 782.

Under California law, "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." C.C.P. § 1670.5(a). Even under federal law, because arbitration agreements under the Federal Arbitration Act ("FAA") are contracts, they are subject to the same defenses as any other contract which include fraud, duress, unconscionability or other general contract law defenses. *See* AT&T Mobility LLC v. Concepcion (2011) 131 S.Ct. 1740, 1745-46 ("Concepcion").

///

The U.S. Supreme Court in Concepcion stated explicitly that "[t]he final phrase of § 2 [of the FAA] however, permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.' This saving clause permits agreements to arbitrate to be invalidated by 'generally acceptable contract defenses, such as fraud, duress, or unconscionability.'" Id. at 1746.

A California appellate court recently clarified this holding's interpretation, in Mission Viejo Emergency Medical Associates v. Beta Healthcare Group (2011) 197 Cal.App.4th 1146, 1158 n.4:

> We invited the parties to provide their comments on the recent United States Supreme Court case, AT&T Mobility LLC v. Concepcion (2011) ——U.S. —— –, 131 S.Ct. 1740, 179 L.Ed.2d 742 (AT&T). Defendants appear to argue that AT&T essentially preempts all California law relating to unconscionability. We disagree, as the case simply does not go that far. General state law doctrine pertaining to unconscionability is preserved unless it involves a defense that applies "only to arbitration or that derive[s] [its] meaning from the fact that an agreement to arbitrate is at issue." (Id. at p. — —, 131 S.Ct. at p. 1746.) This simply does not apply here.

Under current California law, and contrary to Moving Party's contention, "arbitration agreements are neither favored nor disfavored, but simply placed on an equal footing with other contracts." Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 90, 127.

**B. Arbitration Agreements are Not Enforceable If They Are the Product of Fraud**

The FAA provides that arbitration provisions may be denied enforcement "upon such grounds as exists at law or in equity for the revocation of *any contract*." [9 USC §2 (emphasis added); *see* Rent-A-Center, West, Inc. v. Jackson (2010) 561 US 63, 67, 130 S.Ct. 2772, 2776]

In effect, it is well-settled law that generally applicable contract defenses, such as fraud, duress or unconscionability, as determined under applicable law, may be applied to invalidate arbitration agreements. [Doctor's Assocs., Inc. v. Casarotto (1996) 517 US 681, 687, 1116 S.Ct. 1652, 1655; Mortensen v. Bresnan Communications, LLC (9th Cir. 2013) 722 F3d 1151, 1160.

**When, as in the case herein, a party is fraudulently induced to execute a contract, the issue of arbitration enforcement becomes secondary**. In Brown v. Wells Fargo Bank, N.A., 168 Cal.App.4th 938, the Court noted that in the context of an agreement (containing an arbitration clause)

alleged to flow from fraud in the execution, the case "is not really about arbitration" but about the consequences flowing from a fraud in the execution. Id. at 945. As such, Brown discussed the doctrine of fraud in the execution generally, holding that the entire agreement was void. Sabia v. Orange County Metro Realty, Inc. 227 Cal.App.4th 11, at 41, citing Brown, supra, at 958.

As with Brown, it is respectfully submitted that the Court should focus on the fraud in the execution (of the Agreement), rather than the enforcement of an arbitration provision in a fraudulently procured contract.

**C. Arbitration Agreements are Not Enforceable If They Are Procedurally and Substantively Unconscionable**

California Civil Code Section 1670.5, subdivision (a) codifies unconscionability as a reason for refusing a contract's enforcement. It states: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of the unconscionable clause as to avoid any unconscionable result." This provision applies to arbitration agreements under Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83 ("Armendariz").

In Armendariz, the California Supreme Court identified "minimum requirements" for arbitration of claims and determined that arbitration agreements must not be procedurally or substantively unconscionable, holding that:

"[U]nconscionability has both a 'procedural' and a 'substantive' element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results. The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability. But they need not be present in the same degree. Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves. In other words, the more substantively oppressive the contract term, the less evidence of procedural

unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id. 24 Cal.4th at 114 (citations omitted).

Procedural and substantive unconscionability need not be present in the same degree. *See* Mercuro v. Sup.Ct. (Countrywide Secur. Corp.) (2002) 96 Cal.App.4th 167, 174-75 (given employer's highly oppressive conduct in obtaining employee's consent to arbitration agreement, employee was required to make only minimal showing of substantive unconscionability). Here, there is substantial evidence of both procedural and substantive unconscionability in connection with the Agreement's arbitration provision.

### D. Moving Party's Conduct Amounts to Waiver of Right to Arbitrate

In determining whether a party has waived the right to demand arbitration, courts consider a variety of factors, among which whether the party 's actions are inconsistent with the right to arbitrate, whether the party invoked litigation machinery such as taking advantage of judicial discovery procedures not available in arbitration, whether the party delay's is unreasonable or suspicious, and whether the delay affected or misled the opposing party. Cox v. Ocean View Hotel Corp. (9th Cir. 2008) 533 F3d 1114, 1124; In re Checking Account Overdraft Litig. (11th Cir. 2014) 754 F3d 1290, 1294-1297; see In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig. (10th Cir. 2015) 790 F3d 1112, 1116-1119: defendant waived right to compel arbitration by failing to timely assert right, not informing court about presence of arbitration agreement.

## VI. DISCUSSION

The Agreement's arbitration clause is invalid and unenforceable due to (i) Moving Party's fraud preceding the execution of, and in procuring the Agreement, (ii) the unconscionability of the arbitration provision as applied to the context of this dispute, and (iii) Moving Party's conduct.

It is noteworthy that while challenges to the contract's validity may be considered by an arbitrator, defenses existing at law or in equity to the agreement to arbitrate itself (i.e., solely to the arbitration provision) must be presumptively decided by the court. Buckeye Check Cashing, Inc. v. Cardegna (2006) 546 US 440, 445-446, 126 S.Ct. 1204, 1209; see Rent-A-Center, West, Inc. v. Jackson (2010) 561 US 63, 70-71, 130 S.Ct. 2772, 2778; Mamot v. Mastro (9th Cir. 2011) 652 F3d 982, 987;

Cox v. Ocean View Hotel Corp. (9th Cir. 2008) 533 F3d 1114, 1119-1120.

Further, pursuant to 9 USC §4, the court must determine whether there are any disputed issues as the making of the arbitration agreement and the failure to comply (e.g., claim that the agreement to arbitrate was procured by fraud).

**A. <u>The Agreement's Arbitration Provision are Invalid due to Moving Party's Fraud</u>**

As previously stated, the Agreement herein is the clear product of Defendant's fraud, perpetrated upon Plaintiff *prior* to the negotiation and/or execution of the same. In its quest to hire talented developers and programmers to bring to life its vision, Plaintiff's principal told Defendant that the product they were discussing needed to interface with these ride-sharing and private ride applications (such as Uber and Lyft) so that its customers could book rides with these carriers through YayYo's application. Defendant specifically represented and promised that he could accomplish these objectives. [Ramy Decl., ¶6.] Following their meeting, and reliance of Defendant's representations, inducements and promises, Mr. El-Batrawi entered into an Independent Contractor Agreement (the "<u>Agreement</u>"), on behalf of Plaintiff. [Ramy Decl., ¶7.]

The Agreement, at the time it was negotiated and executed, was limited to encompass the provision and performance of certain specific services, as enumerated in Paragraph 4. In other words, it was not Plaintiff's intention, nor was it ever discussed with Defendant, that the arbitration clause within the Agreement would be applied to conduct that *preceded* the negotiation and execution of the Agreement. [Ramy Decl., ¶8.] Moving Party unfairly seeks to avail himself of a fortuitous arbitration provision within the Agreement, which was expressly meant to address and resolve disputes arising "out of" or "related" to the Agreement – not the formation of the Agreement, or facts antecedent to the execution of the Agreement.

Plaintiff has secured the opinion of an expert in the field to support the point that Defendant's representations as made to Plaintiff, before the formation and execution of the Agreement, were false and misleading: Defendant cannot legally extract or access real-time ride-sharing and private-ride information and data, which would entail hacking into private and proprietary systems. [Rashidifar Decl., ¶¶ 6-7.]

Further, the Complaint does not seek to enforce the Agreement directly or indirectly, as Plaintiff is not suing for breach of contract or related claims. In fact, Plaintiff's claims for the most part are related to, and arise out of, Moving Party's fraudulent and negligent misrepresentations *preceding* the negotiation, formation and execution of the Agreement.

It would not serve the interests of justice to apply, *post-facto*, the Agreement's arbitration clause to conduct that occurred prior to the execution of the Agreement. Nor would it be reasonable or equitable to limit Plaintiff's right and remedies pursuant to an Agreement procured by fraud.

In fact, it would be against notions of substantial justice and fair play, if Moving Party were allowed to fraudulently induce a person (i.e., Plaintiff) to enter into a contract with the intent to defraud that person, and subsequently claim that the very conduct that induced Plaintiff to agree to arbitrate should be subject to arbitration.

The arbitration provision within the Agreement should not be enforced due to the revocation on the grounds of fraud. [9 USC §2 (emphasis added); see Rent-A-Center, West, Inc. v. Jackson (2010) 561 US 63, 67, 130 S.Ct. 2772, 2776

**B. <u>Enforcing the Agreement's Arbitration Provision Would be Unconscionable</u>**

1. <u>Procedural Unconscionability</u>

"Procedural unconscionability" concerns the manner in which the contract was negotiated and the circumstances of the parties at that time. It focuses on factors of oppression and surprise. The oppression component arises from an inequality of bargaining power of the parties to the contract, whereas the surprise component is self-explanatory.

Here, the Agreement is admittedly a standard "Independent Contractor Agreement" pursuant to which Plaintiff simply engaged Defendant to provide certain services consisting of "product/platform development, software programming technical analysis and consulting" (the "<u>Services</u>").

The Agreement does <u>not</u> contain any preambles or introductions that refer to or recite Moving Party's purported experience or ability to develop the software application sought by Plaintiff. Those claims and misrepresentations are the focus of the Complaint's claims – not the performance of services on the part of the Moving Party, which was clearly the intent of the parties. [Ramy Decl., ¶¶ 8, 9.]

Therefore, it would be oppressive and unfairly prejudicial (surprising) to apply the Agreement's arbitration clause to deprive Plaintiff of his right to a jury trial to address Moving Party's fraud and misrepresentations.

2. Substantive Unconscionability

While procedural unconscionability focuses on how the agreement was obtained and executed, "substantive unconscionability focuses on whether the provision is overly harsh and is shown if the dispute provision falls outside the "reasonable expectation" of the parties or is "unduly oppressive". Gutierrez 114 Cal.App.4th at 88.

Plaintiff's intent under the Agreement was clearly limited to resolving disputes arising out of and in relation to the Services to be provided by Moving Party – not extrinsic or outside of the four corners of the Agreement. [Ramy Decl., ¶¶ 8, 9.]

Here, Moving Party is clearly seeking to apply the arbitration dispute provision outside of the "reasonable expectation" of the parties (without any doubt, of Plaintiff's reasonable expectation). Such a broad application would be harsh, and unduly oppressive.

Moreover, an arbitration mechanism would deprive Plaintiff of judicially available discovery methods, thus presumably limiting Plaintiff's ability to conduct discovery, at great disadvantage in a context that involves a conspiracy involving multiple parties and multiple claims that would require discovery into intent, among other things.

In sum, applying the Agreement's arbitration provision to address a fraud that precedes the formation of the Agreement would be unconscionable.

**C. Moving Party's Conduct Amounts to Waiver**

Moving Party's conduct, as a whole, should be deemed a waiver of any right to compel arbitration.

Moving Party not only sought and obtained an extension to answer the Complaint without informing the Court about the presence of the Agreement, but it waited until the very last minute to file the Motion, without any substantive or genuine attempt to "meet and confer", as clearly required by the Court's rules, *supra*.

Moreover, Moving Party sought to benefit of the litigation machinery by prematurely seeking to depose Plaintiff's principal Mr. Ramy El-Batrawi, launching into discovery mode soon after service was perfected on Defendant. On January 4, 2017, Defendant's counsel Mr. Daniel Lustig contacted Mr. Ramy El-Batrawi *directly* via email, admonishing that there would be "a lot to talk about during [his] deposition". [Ramy Decl., ¶12; Exhibit "1" thereto.]

In sum, it is submitted that the totality of circumstances indicates that Moving Party misled the Court, as well as Plaintiff. As such, Moving Party is deemed to have waived any right to arbitrate the dispute herein.

**D. <u>The Enforcement of the Agreement's Arbitration Clause would Violate Plaintiff's Constitutional Rights to Due Process</u>**

<u>California Constitution Article</u> 1 § 7 provides that "A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws.". U.S. Const. amend XIV states that "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

If the Court enforces the Agreement's arbitration clause, in particular vis-à-vis the fraud-related claims, the Court will deprive Plaintiff of his due process right to vindicate its statutory rights.

///

///

///

///

///

///

///

///

///

///

## VII. CONCLUSION

It is respectfully submitted that the Court deny the Motion to Compel Arbitration and Stay Proceedings in its entirety.

Alternatively, if the Court were inclined to compel arbitration of the contractual claims (or those claims which may be plausibly related to the Agreement), it is submitted that, in the interest of justice, (i) the causes of action for fraud, fraudulent inducement, fraudulent concealment and unfair business practices be excluded from arbitration, as those claims arose before the parties entered into the Agreement, and (ii) Plaintiff be afforded the full scope of discovery rights otherwise available outside of arbitration confines.

Respectfully submitted,

DATED: February 6, 2017 **MASSERAT LAW GROUP**

By: /s/ Sassan Masserat
Sassan Masserat, Esq.
Attorney for Plaintiff