# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

FILED
CLERK, U.S. DISTRICT COURT
FEB - 8 2017
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

## NOTICE OF DOCUMENT DISCREPANCIES

To: ☑ U.S. District Judge / ☐ U.S. Magistrate Judge Terry J. Hatter, Jr.

From: Derek Davis, Deputy Clerk    Date Received: 12-29-16

Case No.: 2:16-CV-8653-TJH-E    Case Title: YayYo, Inc., v. Hurst Capital LLLP et al

Document Entitled: The Defendant's Answer to the complaint

Upon the submission of the attached document(s), it was noted that the following discrepancies exist:

- ☐ Local Rule 5-4.1 — Documents must be filed electronically
- ☐ Local Rule 6-1 — Written notice of motion lacking or timeliness of notice incorrect
- ☐ Local Rule 7-19.1 — Notice to other parties of ex parte application lacking
- ☑ Local Rule 7.1-1 — No Certification of Interested Parties and/or no copies
- ☐ Local Rule 11-3.1 — Document not legible
- ☐ Local Rule 11-3.8 — Lacking name, address, phone, facsimile numbers, and e-mail address
- ☐ Local Rule 11-4.1 — No copy provided for judge
- ☐ Local Rule 11-6 — Memorandum/brief exceeds 25 pages
- ☐ Local Rule 11-8 — Memorandum/brief exceeding 10 pages shall contain table of contents
- ☐ Local Rule 15-1 — Proposed amended pleading not under separate cover
- ☐ Local Rule 16-7 — Pretrial conference order not signed by all counsel
- ☐ Local Rule 19-1 — Complaint/Petition includes more than 10 Does or fictitiously named parties
- ☐ Local Rule 56-1 — Statement of uncontroverted facts and/or proposed judgment lacking
- ☐ Local Rule 56-2 — Statement of genuine disputes of material fact lacking
- ☐ Local Rule 83-2.5 — No letters to the judge
- ☐ Fed. R. Civ. P. 5 — No proof of service attached to document(s)
- ☑ Other: According to L.R. 83-2.1.1.1, an appearance before the Court on behalf of another person, an organization, or a class may be made only by members of the Bar of this Court.

**Please refer to the Court's website at www.cacd.uscourts.gov for Local Rules, General Orders, and applicable forms.**

## ORDER OF THE JUDGE/MAGISTRATE JUDGE

IT IS HEREBY ORDERED:

☐ The document is to be filed and processed. The filing date is ORDERED to be the date the document was stamped "received but not filed" with the Clerk. Counsel* is advised that any further failure to comply with the Local Rules may lead to penalties pursuant to Local Rule 83-7.

Date    U.S. District Judge / U.S. Magistrate Judge

☑ The document is **NOT** to be filed, but instead **REJECTED**, and is ORDERED returned to counsel.* Counsel* shall immediately notify, in writing, all parties previously served with the attached documents that said documents have **not** been filed with the Court.

FEBRUARY 8, 2017
Date    U.S. District Judge / U.S. Magistrate Judge

* The term "counsel" as used herein also includes any pro se party. See Local Rule 1-3.

COPY 1 -ORIGINAL-OFFICE    COPY 2 -JUDGE    COPY 3 -SIGNED & RETURNED TO FILER    COPY 4 -FILER RECEIPT

Hurst Capital, LLLP
5386 Gulf Drive Ste. 107
Holmes Beach, FL 34217
913-269-2172
INFO@Hurstcap.com

RECEIVED BUT NOT FILED
CLERK, U.S. DISTRICT COURT
DEC 29 2016 and Returned 28
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

U.S. DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YAYYO, INC., a Delaware corporation<br><br>Plaintiffs,<br>v.<br><br>HURST CAPITAL, LLLP, a limited liability limited partnership, AUSTIN HUSRT, [HURST] an individual and ZACH HURST, an individual<br><br>Defendants. | Case No.: 2:16-cv-08653-CBM-E<br><br>JURY TRIAL DEMANDED |

## I. THE DEFENDANT'S ANSWER TO THE COMPLAINT

1. The Parties Filing This Answer to the Compliant

Name: Hurst Capital, LLLP

Address: 5386 Gulf Dr. Suite 107, Holmes Beach, FL 34217

Phone: 913-269-2172

E-Mail: info@hurstcap.com

## II. The Answer and Defenses to the Complaint

COMES NOW the Defendants Hurst Capital, LLLP Austin Hurst & Zach Hurst in answering the allegations of the Complaint on file herein, affirms denies and alleges as follows:

Answering the allegations of Page 2, Paragraph 1, lines 5-9 of the Complaint herein, Defendant affirms all facts.

Answering the allegations of Pages 2 and 3, Paragraphs 2, 3 and 3 (the Plaintiff added a second paragraph numbered 3 on Page 3) lines 10-28 of Page 2 and lines 1-14 on Page 3 of the Complaint herein, Defendant affirms in part that Hurst Capital, LLLP is a private-equity firm investing predominately in the technology and consumer goods sectors, but denies the majority of the facts. Plaintiff YayYo, Inc. a Delaware corporation with its principal place of business in

Los Angeles, California alleges in its complaint that it hired Hurst Capital LLLP a Florida Limited Liability Limited Partnership in the summer of 2016 to develop, create, launch and run its mobile applications and website for consumer use, business development and marketing. In contrary, Hurst Capital LLLP was never hired, contracted or signed any agreements be that contractor agreements, work for hire agreements or any form of employment agreement with YayYo, Inc. or any of its affiliates. Additionally, Hurst Capital LLLP, an entity two of the defendants, Austin Hurst and Zach Hurst joint-manage never signed a Non-Disclosure Agreement with YayYo, Inc. or any of its affiliates. The only written agreement between defendants Austin Hurst and Zach Hurst is a Mutual Non-Disclosure Agreement dated June 9, 2016 and signed personally by the defendants Austin Hurst and Zach Hurst. That agreement included a walkaway clause stating "

The Plaintiff also alleges that it paid Hurst Capital, LLLP approximately $76,802 for services to aid YayYo, Inc. in delivering a usable work product. YayYo, Inc. founder Ramy El-Batrawi verbally agreed to provide the Defendants Austin Hurst and Zach Hurst 15% management level equity in the company in trade for writing the technology plan, recruiting contractors with very unique skillsets, assisting with the business and financial plans, managing the technical teams that were contracted and providing access to their vast rolodex of relationships all in an effort to help YayYo become profitable. There were approximately 40 individuals contracted by YayYo, Inc. while the Defendants Austin Hurst and Zach Hurst were actively involved with the company. The Defendants Austin Hurst and Zach Hurst allowed YayYo, Inc. to independently contract the majority of their engineering relationships directly; however, the Defendants Austin Hurst and Zach Hurst paid a few of these individuals' invoices directly from Hurst Capital,

LLLP for which YayYo, Inc. reimbursed Hurst Capital, LLLP dollar for dollar totaling approximately $76,802. This reimbursement is in no way considered remuneration for Austin Hurst or Zach Hurst's material contribution developing YayYo, Inc. including, but not limited to, hundreds of combined hours of "sweat equity" and the creation of a proprietary technical plan that YayYo, Inc. used in order to overcome specific market obstacles providing YayYo, Inc. the "secret sauce" necessary in order to accomplish multi-operator rideshare booking through a single app without direct operator API access. The Defendants Austin Hurst and Zach Hurst provided the core material for the business plan that YayYo, Inc. used when securing its upstart capital and also provided YayYo, Inc. with numerous opinions disclosing the execution risk that would be involved such as YayYo's unstable reliance on unofficial 3rd party Application Programming Interface access, merchant liabilities and legal threats from rideshare operators, among other concerns. The Plaintiff alleges that the Defendants Austin Hurst and Zach Hurst are at all times relevant to the complaint. The Plaintiff alleges Austin Hurst and Zach Hurst made fraudulent representations to YayYo in order to persuade YayYo to pay hundreds of thousands of dollars for work that was either never completed or incapable of being performed as they represented. It also alleges Austin Hurst and Zach Hurst conspired with their co-Defendants in this action to defraud YayYo and to steal and/or convert approximately $800,000 for their collective personal gain and benefit. This allegation is beyond frivolous and is presented with zero merit. The Plaintiff YayYo, Inc. set forth in its business plan to build the first meta search engine to compare the cost of ride share operators such as Uber and Lyft as well as manage bookings and rewards through a single app. It was made clear by Austin Hurst to Ramy El-Batrawi, YayYo, Inc.'s founder, in their very first meeting that what he was proposing to do was strictly against the terms and conditions of Uber and the other ride share operators YayYo, Inc.

would need to function with in order to attract users. Both Austin Hurst and Zach Hurst concluded that In order to successfully deploy the meta type search engine Mr. El-Batrawi was requesting, YayYo, Inc. would have to build proprietary software that automatically booked rides on behalf of YayYo users by managing virtual accounts with each operator in those user's names. Similar processes have been successfully executed before by companies such as Travelocity, Hotwire, and Orbitz prior to having permission from airlines and allowed them to quote and compare the airline service offerings. These companies used a process in technology called screen-scraping where the computer would download a copy of the travel websites data and publish relevant pieces of it to the aggregator or meta search page the user was viewing. In two previous ventures, the Defendants Austin Hurst and Zach Hurst worked with Ryan O'Connor as well as the other defendants listed in this suit on virtualization-based software projects and described to Mr. El-Batrawi that the unique demands of his project would require the very specific virtualization skill-set and domain expertise that Ryan O'Connor and his team possessed. In an e-mail titled "Additional info for YayYo Plan" sent to Mr. El-Batrawi on Fri, Jun 24, 2016 at 6:19 PM, Zach Hurst submitted additional material for Mr. El-Batrawi to add to the YayYo business plan for Mr. El-Batrawi's express purpose of raising capital. Included was more than a page describing the Defendants Austin Hurst and Zach Hurst's applicable work history with Mr. O'Connor and a detailed description describing the team's previous failures with virtualization ventures; however, it also included the line "The foundational knowhow necessary to execute on the proposed virtualization goals was acquired by the YayYo engineering team over the course of several years through previous virtualization ventures." Mr. El-Batrawi responded to that email on Sat, Jun 25, 2016 at 7:51 AM stating "i would really shorten the virtualization experience section and remove the negative out of it..." The Defendants

Austin Hurst and Zach Hurst made overwhelming efforts to disclose all of the risks associated with the YayYo business model and expected that Mr. El-Batrawi would be similarly forthcoming with his shareholders. Since other meta search websites in the airline and hotel industries had not been shut down, Mr. El-Batrawi was confident that a metasearch engine in ride-sharing would not be shut down either. Mr. El-Batrawi believed that Uber and other large operators would negotiate official deals with YayYo, Inc. as soon as YayYo, Inc. proved traction. In a copy of the business plan sent to Austin Hurst on June 22, 2016 at 12:18:44 AM PDT by Mr. El-Batrawi, it was published under risks that "We may be unable to maintain or establish relationships with providers, which could limit the information we are able to provide to users." and that "Ridesharing providers choose to reduce or even eliminate the fees they pay, our financial performance could be materially adversely affected." In a copy of the business plan sent to Austin Hurst and Zach Hurst on Sat, Jul 9, 2016 at 8:57 AM, Mr. El-Batrawi published under "Revenue Model" that "With critical mass, YayYo intends to gain the necessary negotiating leverage to demand referral fees. In the beginning, each trip will be processed at a loss accounting for merchant fees and general operating considerations such as compute and bandwidth costs. These expenses will initially be slated as marketing with forecasted ROI resulting from rebates and future localized offer arbitrage initiatives." Mr. El-Batrawi was so confident in the strategy that he asked the Defendants Austin Hurst and Zach Hurst to create a pre-registration website offering "two free ride credits" to every new YayYo user and granularly track referral codes for the marketing initiatives YayYo, Inc. was running, including cable television advertisements. While the Defendants Austin and Zach Hurst were actively involved with YayYo, Inc., Mr. El-Batrawi's marketing campaigns resulted in over 10,000 pre-registered users, all of which were promised "two free ride credits" with Uber and Lyft. Mr. El-Batrawi

was extremely confident that upon launch, a significant number of the pre-registered YayYo users would redeem their free ride credits enmass and create volumes of immediate transaction activity with both Uber and Lyft that could not be ignored by either operator; hence, creating the perfect case for an official Uber and Lyft partnership with YayYo, Inc.. Mr. El-Batrawi also believed that because Uber and Lyft were reportedly spending upwards of $100 per user on customer acquisition at that time, the capital markets would also support YayYo's free-ride credit strategy and aggressive marketing expense forecast. For that reason, Mr. El-Batrawi was convinced that YayYo's reliance on unofficial connections into Uber and other operators' services would merely be a temporary dependency and that he could raise "100s of million of dollars" once the app was live in the app store and negotiate direct deals. What the Defendants Austin and Zach Hurst proposed to Mr. El-Batrawi was not only possible, but was successfully accomplished by their teams per the requirements set forth. In fact, Mr. O'connor successfully deployed a prototype version of the app that booked a ride with a third party rideshare operator as proposed. Meeting the rigorous launch deadline for YayYo's beta required that Uber did not change their systems or infrastructure as a means of disrupting the connection between the YayYo technology and the Uber Technology. Several times during the development process Uber, in fact, did change their systems, disrupting the connection between the Uber app and the YayYo technology. This, in addition to various other unforeseen development hurdles such as numerous changeovers with merchant providers, naturally created development delays for YayYo. The entire project scope drastically expanded several times throughout the user-experience design, user-interface prototyping and user story development phases as well as upon new updates to Uber or Lyft's respective apps. The Defendants Austin Hurst and Zach Hurst vehemently deny any allegations that they or their teams were incapable of completing the

project. In fact, Mr. El-Batrawi had several third party technology consultants interview Ryan O'Connor before ever contracting him, communicated directly with Ryan regarding change-order requests and fully understood the risks involved every step of the way. On numerous occasions Mr. El-Batrawi broke the chain of command and communicated directly with contractors that were under the direction of the Defendants Austin Hurst and Zach Hurst which eventually caused internal confusion, developmental delays and three weeks of unnecessarily expensed hours across the design and front-end programming departments. If anyone is to blame for development delays at YayYo, Inc. it is Mr. El-Batrawi for gross mismanagement and general incompetency. The complaint of Fraudulent Representation is baseless and therefore unwarranted.

Answering the allegations of Page 3, Paragraph 4, lines 15-24 of the Complaint herein, Defendant affirms in part that Mr. O'Connor was hired by YayYo but denies that he conspired with his co-Defendants to defraud YayYo or steal and/or convert approximately $800,000 for Defendant's collective personal gain and benefit.

Answering the allegations of Pages 3-4, Paragraph 5, lines 25-28 on Page 3 and lines 1-5 on Page 4 of the Complaint herein, Defendant affirms in part that Mr. Edwards was hired by YayYo but denies that he conspired with his co-Defendants to defraud YayYo or steal and/or convert approximately $800,000 for Defendant's collective personal gain and benefit.

Answering the allegations of Page 4, Paragraph 6, lines 6-14 of the Complaint herein, Defendant affirms in part that Mr. Lisiescki was hired by YayYo but denies that he conspired with his co-Defendants to defraud YayYo or steal and/or convert approximately $800,000 for Defendant's collective personal gain and benefit.

Answering the allegations of Page 4, Paragraph 7, lines 15-23 of the Complaint herein, Defendant affirms in part that Mr. Gilbert was hired by YayYo but denies that he conspired with his co-Defendants to defraud YayYo or steal and/or convert approximately $800,000 for Defendant's collective personal gain and benefit.

Answering the allegations of Pages 4 and 5, Paragraph 8, lines 24-28 on Page 4 and lines 1-4 on Page 5 of the Complaint herein, Defendant affirms in part that Mr. Andreini was hired by YayYo but denies that he conspired with his co-Defendants to defraud YayYo or steal and/or convert approximately $800,000 for Defendant's collective personal gain and benefit.

Answering the allegations of Page 5, Paragraph 9, lines 15-23 of the Complaint herein, Defendant affirms in part that Mr. Gilbert was hired by YayYo but denies that he conspired with his co-Defendants to defraud YayYo or steal and/or convert approximately $800,000 for Defendant's collective personal gain and benefit.

Answering the allegations of Page 5, Paragraph 10, lines 14-19 of the Complaint herein, Defendant denies that fictitiously named Defendants caused damages to YayYo.

Answering the allegations of Pages 5 and 6, Paragraphs 11-13, lines 22-27 on Page 5 and lines 1-14 on Page 6 of the Complaint herein, Defendant denies all claims. The Plaintiff alleges the Defendants Austin Hurst and Zach Hurst were Hurst Capital's alter egos. The Plaintiff is informed and believes and on that basis alleges that there was a commingling of funds or other assets, identical equitable ownership, inadequate capitalization, disregard of corporate formalities, and a lack of segregation of corporate records as among Austin, Zach and Hurst Capital. Hurst Capital LLLP is a Florida based Limited Liability Limited Partnership established and incorporated on April 6, 2012 following a company operating agreement prepared and executed on April 1, 2012. Hurst Capital LLLP has 3 managing partners and 2 limited partners.

Hurst Capital LLLP is based out of its Florida office located at 5386 Gulf Dr. Suite 107, Holmes Beach, FL 34217. Per the terms of the Hurst Capital LLLP Operating Agreement the defendants Austin & Zach Hurst jointly hold all equitable interests in Hurst Capital LLLP and from time to time the LLLP makes investments in companies. In a verbal contract The Defendants Austin Hurst & Zach Hurst asked Plaintiff to assign the YayYo partnership equity to Hurst Capital LLLP to follow the strict guidelines set forth in their own partnership agreement. Hurst Capital LLLP maintains its corporate records and justly operates as a Limited Liability Limited Partnership in the State of Florida. The Plaintiff's effort to pierce the corporate veil of Hurst Capital by making allegations of every legal possibility is completely frivolous, unwarranted and without merit.

Answering the allegations of Pages 7-11, Paragraphs 16-27 of the Complaint herein, Defendant denies all claims. The primary allegation states Mr. El-Batrawi during mid-june 2016 acting on YayYo's behalf met with Austin Hurst who was representing Hurst Capital, LLLP at the W Hotel in Hollywood. Through way of a mutual acquaintance he met with Austin in an effort to find a company to hire to build his mobile and web applications. Mr. El-Batrawi alleges that after sharing his idea, "Austin jumped at the chance" also continuing that Austin claimed through Hurst Capital he and his brother had successfully built and launched numerous mobile applications – such as Celebvidy. Austin spoke highly of his "team in Miami", insisted that he along with Zach and Hurst Capital were experts in the field and promised that they could build an application and website that performed exactly how Mr. El-Batrawi envisioned. The meeting took place on June 2, 2016 at the W Hollywood. Contrary to these allegations Austin did not "jump at the chance". In fact, Austin was very vocal about the risks involved in violating Uber's Terms of Service and confidently presented to Mr. El-Batrawi in front of the mutual

acquaintance his concern. Mr. El-Batrawi was very bullish in not worrying about a lawsuit saying "If I generate them millions in revenue day one they will not shut me down, only embrace me." Not once in the initial meeting did Austin speak about his team in Florida. He merely indicated one possible way of accomplishing it would be to use Android powered virtual machines running the Uber app and build software that mimicked finger taps when someone pressed the same commands on the YayYo app. He was very clear that he needed to consult some advisors and experts before coming back to Mr. El-Batrawi. Austin never promoted any experience launching numerous mobile applications. Mr. El-Batrawi actually didn't ask Austin about his background in the meeting. If that information was presented, then it was by way of their mutual acquaintance who Mr. El-Batrawi spent a considerable amount of time with prior to the start of the meeting. The app Mr. El-Batrawi mentions in this complaint is "Celebvidy". While working on YayYo, Austin and Zach were very vocal with Mr. El-Batrawi regarding the state of Celebvidy's platform development and the fact that it was not complete yet. In fact, any delay to YayYo's development timeline could threatened Austin and Zach's attention to Celebvidy as well as their vested interest in YayYo as well as other ventures. Mr. El-Batrawi indicated Austin and Zach would make so much money from YayYo they need not to worry about Celebvidy and showed absolutely zero interest in hearing the Celebvidy business plan or acknowledging Austin & Zach's fiduciary duty to complete the project. As such, while working in partnership with Mr. El-Batrawi to design and build YayYo, Austin & Zach contributed what little hours they had remaining to their other holdings, Celebvidy included. In the June 2nd meeting Austin made no indication to Mr. El-Batrawi he could or had the teams in place to do what Mr. El-Batrawi was requesting and needed to consult some advisors and experts before coming back to him. In an e-mail sent by Mr. El-Batrawi to Austin Hurst, Zach Hurst, Mr.

O'Connor and two other technical team members on Sun, Sep 25, 2016 at 6:39 PM, Mr. El-Batrawi stated "I looked and our teams and I find that everyone on them is amazing. The talent is undeniably there. Austin and Zack put together something special when they pull all of you together. Every team lead by Ryan, Shadi, Cris, Desire, even the small teams that Austin put together for the website are great.... Austin and Zach are more like me big thinkers and dealmakers and can see the big picture and this is not the only thing they are working on. As they pointed out a few times when I approached them they were not sitting on their hands. They were working on 40 other projects. So the technical side of project management is not what they able to do at this time.

*The complaint continues "Austin stated that Hurst Capital could complete the project by September 1st and that it would cost YayYo $150,000 for both the website and the mobile application that worked on both the Apple and Android platforms.*

The September 1st delivery date was nothing more than an optimistic dream stated numerous times over by Mr. El-Batrawi. Mr. El-Batrawi actually reference several times a book called "Think and Grow Rich" where a select passage taught him to give himself and others unrealistic timelines therefore he/they were motivated to work hard every day knowing that they most likely wouldn't achieve the goal but would be much further along than if his deadline was later. This is a philosophy Mr. El-Batrawi preached to not only the defendants but anyone who came into his office. He kept copies of the books to hand out to individuals he chose to gift them to. Austin never saw eye-to-eye with Mr. El-Batrawi on this delivery date saying numerous times over a 90 day track that to develop a full working app was beyond crazy; it would take a perfect world scenario where there were zero setbacks the entire way. Mr. El-Batrawi continued to say September 1 to everyone even when it was clear to him that was never going to happen. In the

initial meeting Austin threw out a ballpark figure of $150,000 to develop a website, mobile app (ios/android) and tech plan based on a full stack single engineer working on the whole project. Before making a final assessment Austin made it clear to Mr. El-Batrawi he needed to do some technical discovery and due diligence to make sure what they were proposing was even possible. It wasn't until this discovery was complete that Austin could make an accurate assessment the project would move forward.

*The complaint continues: Within a couple of weeks of the first meeting, Mr. El-Batrawi had a second meeting with Hurst Capital. This time, both Austin and Zach attended. They met at a café in Beverly Hills, California and further discussed a potential deal between YayYo and Hurst Capital in which Hurst Capital would create, develop and finalize YayYo's website and mobile applications.*

June 8th, 2016: Mr. El-Batrawi did not have a meeting with Hurst Capital. He had a meeting with Austin and Zach Hurst. The purpose of the meeting was to come to terms on their partnership. In this meeting Mr. El-Batrawi asked Austin directly what he would like in terms of equity. Austin suggested the following terms: 15% founders equity in the company. Mr. El-Batrawi also indicated that his partner Henrich Bari would be receiving 5%. It was clear to Austin and Zach at this time Mr. El-Batrawi was willing to dilute up to 20% of the company and keep 80% for himself. Austin asked Mr. El-Batrawi how the company was structured and Mr. El-Batrawi indicated he had a special LLC structure where 50% of the company belonged to the founders and 50% belonged to the investors. Investors would receive all their principle back first from net profit and then all proceeds following would be split pari-passu among the founders and investors. The way the LLC was structured the founders could never be diluted from their 50%. This sounded like an appealing structure. At the worst outcome Austin & Zach would own 10%

of the company which at the diluted value would be 5% of the entire LLC. This verbal agreement was in place and Austin requested paperwork documenting it. Never did Austin & Zach agree they would or Hurst Capital would create, develop and finalize YayYo's website and mobile applications. In fact, Austin only indicated he would introduce Mr. El-Batrawi to developers that could handle the task.

*The complaint continues: Again, Austin represented that they (meaning he, Zach, Hurst Capital and their "team") could unequivocally create a website and mobile application that could accomplish exactly that Mr. El-Batrawi envisioned. Zach also spoke throughout the meeting, confirming too that Hurst Capital and their teams were experts in coding, developing software and programming. Both Austin and Zach represented that they were capable of developing code and programming that could access real-time pricing offered by all ride-sharing and private ride services (such as Uber and Lyft). Austin and Zach specifically guaranteed they had the know-how and technology experience to accomplish the specific product features Mr. El-Batrawi explained.*

Never did Austin or Zach indicated "Hurst Capital" was a software development company or was to be "hired" by YayYo nor, did Austin and Zach refer to the engineers/programmers/developers as "Their Team". These were all independent contractors with real world jobs that did not actively work with or directly for Austin and Zach. Austin and Zach agreed to becoming founding equity partners in YayYo, LLC in trade for the sweat equity of planning, recruiting and leading teams down a critical path of development. In trade for a verbal contract and a extremely aggressive artificial deadline Austin and Zach went immediately to work identifying highly qualified individuals around the country all with specific skillsets deemed necessary by not only Austin and Zach but also Mr. El-Batrawi in accomplishing the

job. Mr. El-Batrawi had Austin's first hire do numerous phone and skype driven interviews with people Mr. El-Batrawi trusted to be experts in technology to further validate his resume and wherewithal. Mr. El-Batrawi did not "hire" Hurst Capital, Austin or Zach Hurst at any point; it was a partnership from the start. In this meeting Austin made it very clear a technical discovery would have to be completed to validate the theories being tossed around in respect of how to accomplish the tasks. He was also very clear no one he put Mr. El-Batrawi on the phone with would consult for that many hours for free. Mr. El-Batrawi said money was not a problem. He also indicated in that meeting he was raising $500,000 for the company. Austin made it clear to Mr. El-Batrawi he did not believe Mr. El-Batrawi could raise money from any sophisticated investors without the technical discovery complete, a business plan and a financial plan in place. He suggested to Mr. El-Batrawi everything needed to get to that next stage.

*The complaint continues: When discussing the cost, Austin and Zach represented that the price would be somewhere between $150,000 to $250,000. They were clear that the cost would never exceed $250,000.*

This statement was made without any technical discovery or research to reveal the complexity of the task moving forward and cannot be taken as fact. Additionally, when Mr. El-Batrawi met the potential engineering hires (The remaining defendants on this complaint) it was made clear their hourly rates, number of hours needed per work week and provided a detailed breakdown of costs well exceeding the $250,000 figure. Mr. El-Batrawi chose to move forward with them as independent contractors, pay them directly, communicate with them directly and receive all invoices and related statements regarding hours worked and when payments were due. Austin and Zach were never CC'ed on these communications. This was a direct relationship between the other defendants and Mr. El-Batrawi. Austin merely facilitated an introduction.

*The complaint continues: Soon thereafter, Austin and Zach insisted that Mr. El-Batrawi meet their team of developers and technology staff in Florida. They claimed Mr. El-Batrawi would be impressed with their team and that this meeting would solidify Hurst Capital as the right company for YayYo's job.*

Austin shared with Mr. El-Batrawi a research report completed by 451 Group out of San Francisco validating Ryan O'Connor's competency in virtual machines. Austin also shared with Mr. El-Batrawi that he met Mr. O'Connor after Mr. O'Connor was executively recruited to become the head of engineering at a Tampa based tech company Austin & Zach were customers of. Austin indicated to Mr. El-Batrawi not only has someone else already burdened the expense of an executive recruiter, but this assembled team was the best in their field (that field being software virtualization) and what Mr. El-Batrawi was trying to do required experts in said field. Never did Austin or Zach represent Mr. O'Connor was an employee, part of an active "team" or that Hurst Capital was a software development company looking for work. Austin & Zach Hurst are 15% equity partners with Mr. El-Batrawi who owns the majority of the company and Henrich Bari who owns 5% in the startup company YayYo, LLC.

*The complaint continues: Mr. El-Batrawi obliged their request and traveled to Florida to meet Hurst Capital's team. Mr. El-Batrawi met with Austin and O'Connor at a restaurant around Orland, Florida. He spent time once again discussing the intricacies of the product YayYo envisioned. Mr. El-Batrawi specifically discussed the fact that YayYo needed to be able to access real-time, accurate pricing options available to the public via all ride-sharing and private ride applications so that they could offer these prices to the consumer. Mr. El-Batrawi emphasized that the pricing needed to be correct, and updated to reflect exactly what the prices and options were available to a customer, at any given time, for any ride sought. Mr. El-Batrawi*

*also discussed that YayYo's product needed to interface with these ride-sharing and private ride applications (such as Uber and Lyft) so that its customers could book rides with these carriers through YayYo's application. Austin emphatically confirmed that Hurst Capital's team absolutely could accomplish these objectives. O'Connor also specifically represented that he, along with Hurst Capitals' "team" could accomplish these objectives. Austin and O'Connor discussed various technology avenues available to achieve these product features. They touted their experience in this industry and insisted these were completely accomplishable objections. Never once did Austin, Zach or O'Connor ever state – verbally or in writing – that it would be impossible for them to build the product YayYo wanted to bring to market. To the contrary, they assured Mr. El-Batrawi that they could make YayYo's vision a reality – and that they could do so by September 1st for no more than $250,000.*

Mr. El-Batrawi demanded an in person meeting with Mr. O'Connor and requested Austin book a flight with his identical itinerary. Mr. El-Batrawi never referred to Mr. O'Connor as Austin's "team". Neither Mr. O'Connor or Austin referred to "Hurst Capital" as a software company specifically responsible for the delivery of the product. Mr. El-Batrawi was very aware Mr. O'Connor had a full time job and was a potential recruit for a position as Engineer. Mr. El-Batrawi and Austin Hurst flew to Miami International Airport where Mr. El-Batrawi rented a car and the two of them drove to West Palm, Beach where O'Connor would meet them at a restaurant half-way in-between his house and the hotel Mr. El-Batrawi was staying at. In the meeting Mr. O'Connor made it clear to Mr. El-Batrawi that as an engineer he and his colleagues like to break things down and figure out how they work. Therefore this job would be a fun one to do. Mr. O'Connor's response when Mr. El-Batrawi would ask him if he was capable of making it work was always "I'll figure it out". Mr. El-Batrawi complimented him numerous times on the

response saying he liked that attitude. Never did O'Connor agree to a deliverable date and laughed every time Mr. El-Batrawi said, "so you can get it done by September 1". He simply said "I can try my best". Mr. El-Batrawi worked hard to convince Mr. O'Connor to quit his job and come work full time for YayYo in California. He even went as far as showing Mr. O'Connor a real estate listing on Zillow of a multi-million dollar home he said he would purchase for O'Connor if he moved. Austin always disclosed the risks associated with reliance on Third Party vendors the company had no contracts with; furthermore, emphasizing the fact it could bring forth legal action as well as legislative troubles. Mr. El-Batrawi removed all disclosures of risk from the business plan drafts before forwarding it on to potential investors against Austin & Zach's insistence on keeping them in there. Mr. El-Batrawi called Austin's attitude "negative" and would not let him come to meetings with potential investors. Austin was afraid there would be disclosure violations in the fundraising effort but Mr. El-Batrawi assured him it was all above board and he knew what he was doing. "Hurst Capital" was never mentioned in any conversations related to being contracted, hired, assigned, etc. nor are there any contracts of such a relationship. Contrary to the allegations in the complaint, a total price for the development of the project was never discussed during the initial dinner in West Palm Beach with Mr. O'Connor. This discussion would take place the following morning in Mr. El-Batrawi's hotel room. In Mr. El-Batrawi's hotel room Mr. O'Connor discussed his rates with Mr. El-Batrawi. It was Mr. O'Connor's personal hourly rate as well as the rates of the individuals Mr. O'Connor suggested were necessary in order to accomplish different tasks associated with the backend development and engineering of the platform. Mr. El-Batrawi asked him if he could get the project finished by September 1 in which Mr. O'Connor laughed again and said "that's really aggressive and probably won't happen". Mr. El-Batrawi offered Mr. O'Connor and his team

bonuses for finishing on time. In the meeting he told Mr. O'Connor was told that if he finished by September 1st he would receive a bonus check for both him and every member of his team, but that amount would reduce incrementally if he delivered the product in October, November or December. If the product took longer to produce there would be no bonus. O'Connor verbally agreed and said they would do their best to get the job completed. O'Connor also asked Austin during the meeting who was in charge of the front-end development of the application to which Austin indicated he had a team in mind but were not ready for them yet. Later, Austin would hire Shadi Fares to handle front-end development and work with O'Connor to connect it via API End-Points to the backend.

*The complaint continues: Following these meetings, in reliance on Austin's, Zach's and O'Connor's express representations, YayYo entered into an agreement with Hurst Capital to build YayYo's website and mobile applications and to have both fully complete and operational by September1, 2016, in exchange for compensation not to exceed $250,000.*

Mr. El-Batrawi's claims are patently false and no such agreement exists either verbally or written with Hurst Capital. The verbal agreement on June 8, 2016 with Henrich Bari as witness was that Austin & Zach Hurst would receive 15% founders equity in the company. Henrich Bari would receive 5%. Austin and Zach Hurst are partners in YayYo, LLC now YayYo, Inc. Not employees. Not contractors.

*The complaint continues: YayYo relied on Austin's, Zach's and O'Connor's representations to its detriment. Among other things, YayYo solicited funding from various investors, spent $500,000+ on marketing materials and promotional spots, operations and made deals with various investors and third parties to raise further capital and generate market interest in YayYo's product. Unfortunately for YayYo, it turned out that Austin's, Zach's and*

*O'Connor's representations were false, that it was impossible for Hurst Capital to provide the deliverables as promised, and that the Defendants were conspiring all along to defraud YayYo to the tune of $800,000, all for their personal gain and benefit.*

Mr. El-Batrawi asked Austin and Zach Hurst to lead the development teams and deploy a pre-registration website where users could fill out basic information in anticipation of an app launch. Not only was a pre-registration website launched, the database collected in excess of 10,000 customer records. Mr. El-Batrawi never consulted his business partners Austin or Zach Hurst on spending the company money freely and if he spent in excess of $500,000 on marketing, he did so without their consent. Austin and Zach Hurst never had access to the company financial accounts, never saw a copy of the operating agreement, nor can confirm how much money the company raised and for what percentages. Any investors in the company subscribed under Mr. El-Batrawi's own disclosures. Mr. El-Batrawi showed Austin an e-mail from a banker in New York City requested information about how YayYo has obtained API Access from Uber. Mr. El-Batrawi showed Austin how he avoided the topic in his replies but insisted YayYo needed to get a deal in place so he could respond without omission. It's Austin's opinion Mr. El-Batrawi did not disclose risks properly when promoting the investment. These allegations are frivolous, baseless, unwarranted and without merit.

*The complaint continues: After YayYo hired Hurst Capital and Hurst Capital's "team" – which was comprised of Defendants – YayYo learned that they had been the victim of a bait and switch. It turned out that Defendants were utterly incapable of providing the deliverables they promised. Despite Defendants' representations and proclamations to the contrary, it was actually impossible for them to access real-time, continuously updated pricing from available*

*ride-sharing and private-ride services in the area. This was the key component of YayYo's product. Without it, the product was useless. Defendants were also far from the experts they claimed to be in the technology and software industries. They created a website that was fraught with errors and bugs, so much that YayYo had to hire a new company to completely retool the website so that it functioned properly. Defendants' work product on the mobile applications was even more useless.*

YayYo did not "hire" Hurst Capital. YayYo's backend engineering team, which comprised of all defendants with the exception of Hurst Capital, Austin Hurst and Zach Hurst, was YayYo's "team". They were all independent contractors who signed agreements individually with Mr. El-Batrawi to work directly for YayYo, LLC. They were paid directly by YayYo, LLC. They reported to Mr. El-Batrawi directly through Mr. O'Connor. Mr. El-Batrawi chose to carry communications with Mr. O'Connor directly about the product, the features, the road map and the progress. These conversations took place several hours per day without Austin or Zach. Mr. El-Batrawi never summarized or updated Austin or Zach in respect to these conversations. Mr. El-Batrawi had numerous technology consultants at the highest-level interview Mr. O'Connor about his experience as well as his objectives on how to accomplish the job. Mr. El-Batrawi had a copy of Mr. O'Connor's resume as well as the resumes of every team member which he published in the business plans shown to his investors. Mr. El-Batrawi was extremely controlling of the process and demanded direct relationships with every member of the team. The Plaintiff's claim is "*impossible for them to access real-time, continuously updated pricing from available ride-sharing and private-ride services in the area.*" This claim has zero merit. Accessing real time pricing is a feature of both Uber and Lyft's public APIs. It requires no hacking of Uber and Lyft. The data the Plaintiff is claiming O'Connor was unable to access is

publically available to anyone in the world. There are several dozen websites on the internet that tap this data to create search tools. The "key component" of YayYo's technology was not accessing the pricing of the rides. It was being able to book one without leaving the YayYo app and entering the ride share provider's app. It is clear from the complaint Mr. El-Batrawi does not understand his own product. Austin and Zach Hurst contributed the core of the business plan which clearly defines the purpose of the company and what the investors bet on. The buggy website Mr. El-Batrawi is referring to is the pre-registration page that was developed in offshore India to save Mr. El-Batrawi money. It was not recommended by his partners Austin & Zach Hurst to task Mr. O'Connor at his high hourly rate to build a website and Austin told Mr. El-Batrawi on several occasions the speed and efficiency in which the website was being developed was dependent on the talent level expectancy of offshore resources. It was against the better judgment of Austin and Zach Hurst to burn excess company dollars on code that would be scrapped when the product launched. Clearly, Mr. El-Batrawi's philosophy of how to spend his investors' money differed. At the time Mr. El-Batrawi asked Austin and Zach Hurst to allow a product manager with 17 years of experience in Silicon Valley take over, there was no mobile app. Mr. El-Batrawi had worked behind the backs of Austin and Zach Hurst to redesign the entire product from the ground up wasting 30 days of development time and forcing the front-end developer to throw out all of his code. Whatever code was delivered under the leadership of the new product manager and under the obsessive control of Mr. El-Batrawi is in no way a reflection of Austin and Zach Hurst's departure on October 3, 2016. These allegations are frivolous, baseless, unwarranted and without merit.

*The complaint continues: Over the course of July to October 2016, Defendants continued to insist that YayYo pay more and more money in order to cover the cost of hiring additional*

*engineers. Defendants claimed they needed to hire more and/or different people to provide the product they initially promised to deliver on September 1, 2016 and for no more than $250,000. Defendants missed their deliverable deadline and forced YayYo to pay it an additional $550,000 through nonstop invoices for additional engineers and services it insisted were necessary to complete the application.*

The aggressive and artificial deadline of September 1, 2016 forced the defendants to recommend the hires of multiple resourceful teams in parallel against all best practices of technology development. The defendants made it clear to Mr. El-Batrawi how traditional technology tracks work and he was told this not only by Austin and Zach Hurst, but also by the resources they recommended he hire. Mr. El-Batrawi refused to listen to reality and operated from a delusional state of mind. Mr. Shadi Fares the front-end developer had an extensive background in enterprise app development working for Pitney Bowes and told Mr. El-Batrawi his deadline was "absolutely crazy" for the best of the best. He created what we referred to as a "waterfall effect" where all hands were on deck to handle tasks as they presented themselves instead of planning out features and teams waiting for their predecessors to complete jobs. The feature list set forth in the initial Florida meeting was reduced to 10% of the total features presented after a month of planning. Mr. El-Batrawi saw 100% of the features and said he wanted them all for launch. Mr. El-Batrawi said money wasn't an issue and if we needed more people to get the job done he would pay for them. Mr. El-Batrawi had control of the company accounts. Mr. El-Batrawi had complete control over how much money was being spent. If the $550,000 exceeding a budget he concocted was spent, his signature will be found on every check. No one forced Mr. El-Batrawi to do anything. If what Mr. El-Batrawi is saying was accurate, it would also be accurate to suggest gross mismanagement of investor funds by Mr. El-

Batrawi. However, not a word of this complaint is accurate. These allegations are frivolous, baseless, unwarranted and without merit.

*The complaint continues: Some five months and $800,000 later, YayYo realized it had been duped. Defendants still did not have a functioning product, the work they had claimed to complete was entirely useless and in the end, YayYo had absolutely nothing to show for the time and money it spent relying on Defendants' representations. YayYo ultimately had to hire a new team of experts to build its product from scratch.*

On October, 3rd, 2016 under the threat of legal action for interfering with the new Product Manager – Austin and Zach Hurst decided to sit on their equity and focus their time on other business ventures. Plaintiff instructed all contractors of YayYo that if they communicated or attempted to communicate with Austin and Zach Hurst that they would be sued and that he was preparing a lawsuit against Austin and Zach Hurst. Following being served papers alongside the other defendants, Austin was able to speak for the first time to Mr. O'Connor. It turns out the product was in fact completed. The only portion of the product that was not working had to do with the phone numbers YayYo would need to assign to its users when signing them up on the Uber and Lyft apps. The team contracted by Austin and Zach Hurst to handle the phone numbers were never paid and fired on October 3rd when Mr. El-Batrawi asked Austin and Zach to cease their involvement with YayYo. It turns out this decision by Mr. El-Batrawi single handedly cost him a working product. A decision which happened after Austin and Zach departed their operational roles in the business. A decision Mr. El-Batrawi made in haste because he was misinformed about his own company and why each team was hired. Removing key people without a proper transition plan is a recipe for disaster in any business and Mr. El-Batrawi made this decision under his own authority. The Plantiff alleges that they had to build the product from

scratch; however they are still using the code. The repository of source code shows it's been forked and is still being accessed and used by YayYo, Inc. YayYo published an app to the iTunes App Store on December 5th, several days after filing the lawsuits using the code. The pre-registration website is still active on the yayyo.com homepage where they are still using the code. It is without a doubt YayYo is not rebuilding a product from scratch just continuing to work with what was already contributed by its contractors. These allegations are frivolous, baseless, unwarranted and without merit.

*The complaint continues: To date, YayYo is still recovering from the damages defendants caused. Its product launch has been delayed. It has lost out on millions of dollars in funding and capital investments due to Defendants' shortcomings. It has lost out on other viable income generating opportunities because it did not have a working product by September 1st as Defendants guaranteed. YayYo suffered additional out of pocket losses in increased costs, wasted opportunities, and money spent on marketing and launch tasks.*

On Wednesday, September 28th, 2016 at 7:48pm the Plaintiff's contractor Desiree Sisneros accidentally attached new design files to an e-mail titled "Video for site" and e-mailed it to Austin Hurst at which point Austin and Zach Hurst uncovered a compartmentalized agenda to undermine their work and set the tech development off its planned trajectory. Austin questioned Desiree's objectives but she had no valid defense for why Austin and Zach were out of the loop. At 8:41pm Austin conducted a 2 hour and 23 minute conversation with Shadi Fares trying to understand why all these changes were happening. It was pretty obvious he also, on several occasions, made it clear to the Plantiff and Desiree that the changes were so drastic he would have to start over. In the coming days we spoke to all team members to verify the directives came from the Plaintiff. Mr. El-Batrawi was paying all contractors directly therefore

he was their boss. They did what he said and did not feel the need to run it by Austin and Zach for approval. On the morning of Monday, October 3 2016, Mr. El-Batrawi spoke for 15 long minutes admitting to a month long internal compartmentalized effort to direct the teams himself as he believed jobs were not being done properly. He shortly thereafter asked for Austin and Zach Hurst to stop anything related to YayYo. By removing the two key individuals capable of leading YayYo's development teams to the finish line, the Plaintiff is solely responsible for the company's failure; due to protecting his own ego, pride and enacting a hastily rush to judgment. Therefore, his allegations are frivolous, baseless, unwarranted and without merit.

In summary Mr. El-Batrawi, the Plaintiff, admittedly in his claims had no prior substantive experience in the technology or software industries. Mr. El-Batrawi needed Defendants Austin and Zach Hurst to oversee the technology side of the business – this is why he partnered with them. Mr. El-Batrawi is trying to erroniously persuade the court Defendants Hurst Capital, Austin Hurst and Zach Hurst were employees and/or contractors "hired" by his company to provide services when in fact that is far from the truth. Hurst Capital LLLP is a 15% equity holder of YayYo, LLC. or the equivalent conversion when the company was changed to YayYo, Inc. With software ventures, it is not unusual to acquire what is commonly referred to as "technical debt" inside of a start-up business. Oftentimes, start-ups hire on marketing and sales teams before the software is fully complete because it is important to develop the brand and prepare the sales materials for the inevitable product launch. In these cases, the software development teams are further pressured to meet their proposed deadline because if they miss it, it could lead to layoffs in other departments across the organization. When technical debt presented itself at YayYo, marketing efforts were not impacted whatsoever because the strategy was solely focused on pre-registering as many users as possible by launch, be that in September

2016 or later. By running several cable television advertisements among other sizable marketing campaigns which drove traffic to the YayYo.com landing page, asking the Defendents to develop an automated referral system which, not only credited bonus miles upon new user referrals in a rewards program but also, made it incredibly easy for these incentivized users to share their unique affiliate links, by offering two free ride credits for Uber and Lyft to empower every new user, exposing the company to in excess of $400,000 in redemption liability that Austin and Zach Hurst are aware of through these programs, disregarding opinions regarding legal, legislative and/or regulatory risks in addition to putting zero restrictions on his pre-enrollment sign-up forms or caps on how many reward miles a new affiliate user could earn, Mr. El-Batrawi illustrated without a shadow of a doubt that his company's operational style was consistent with that of a very well capitalized Silicon Valley start-up company and likely was not forthcoming with his shareholders regarding the true reason for the development delays leading to suspicion of misappropriation. By falsely placing the blame on the Defendants Austin Hurst and Zach Hurst with this claim and promoting an absolutely absurd potential for damages to his shareholders, Mr. El-Batrawi was able to conceal his own judgements as a CEO; namely, his inability to properly manage his own company's runway or burn-down expectations. The wishful thinking and decudions made in a vaccuum left YayYo is an illiquid state, presented issues making payroll and eventually resulted in the unjust removal of the Defendants Austin Hurst and Zach Hurst from their management roles. Defendants Austin Hurst and Zach Hurst are both managing partners of Hurst Capital, LLLP where they see a pro-rata distribution of Hurst Capital's equitable interest in YayYo, Inc.

The Plaintiff's misremembering of key facts should discredit the Plaintiff in this case. For example Mr. El-Batrawi could not remember that he requested his only in-person meeting with Mr. O'Connor or where Mr. El-Batrawi travelled to meet Mr. O'Connor. Mr. El-Batrawi falsely contends that he hired Hurst Capital (a private equity firm) as a software development company and believes his 1099 contractors (all locked in legally binding independent contractor agreements), paid by YayYo at the sole direction of Mr. El-Batrawi, were somehow employees or contractors of Hurst Capital.

Not some but all-27 claims in General these Allegations are fictional at best, patently false at worst. It should be clear to the court that the Plaintiff brought this frivolous, baseless, unwarranted and without merit claim against the Defendants in an effort to more easily promote YayYo to current and new potential shareholders following his previous missteps.

Answering the allegations of Pages 11-22, Paragraphs 28-88 of the Complaint herein, Defendant denies all facts. The Plaintiff alleges Hurst Capital, LLLP, Austin Hurst and Zach Hurst were employees, contractors, work for hire and contractually obligated to provide services not exceeding $250,000 for YayYo, Inc. in the deployment and development of their website, iOS Application and Android Application. The Plaintiff alleges the Defendants misrepresented their capabilities in an effort to bill more hours, hire more workers and steal $800,000 from the company. The Plaintiff alleges the Defendants delivered no working product or code and the Plaintiff is rebuilding their product from scratch. The Plaintiff alleges the Defendants conspired with the other Defendants to carry out this plan and keep the company from launching, interfering with the Plaintiff's economic business interests. Hurst Capital, LLLP, Austin Hurst and Zach Hurst are in fact not employed or contracted by the Plaintiff. There is no agreement or written representation of such agreement in existence. In the company business plan that has

been shared with investors, Defendants Austin Hurst and Zach Hurst are titled as Advisors and Consultants and in a verbal agreement with witness on June 8, 2016, the Defendants Austin Hurst and Zach Hurst agreed to accept ~~10~~ 15% equitable interest in the company in trade for "sweat equity" and managing the tech side of the company. All of the other contractors signed individual independent contractor agreements; several of which were countersigned by Austin Hurst as an acting officer of YayYo. All of the other employees including the other Defendants listed were paid by the company directly and not through Austin or Zach Hurst. The Defendants Austin Hurst and Zach Hurst have thousands of combined hours of material contribution to the business including writing the technology plan, recruiting contractors with very unique skillsets, assisting with the business and financial plans, managing the technical teams contracted and providing access to their vast rolodex of relationships only in an effort to help YayYo become profitable. On October 3rd, 2016 the Plaintiff hired a product manager with 17 years experience to replace the duties fulfilled by Austin and Zach Hurst as business partners. Austin and Zach Hurst removed themselves quietly and respectfully from the roles and have made a continued effort not to harm YayYo's reputation. Austin and Zach Hurst wish only for YayYo's to be successful which would inevitably increase the vested value of their sweat equity. The claims brought forth in this lawsuit are not only misrepresentative of who the defendants were to YayYo, Inc., they are frivolous, baseless, unwarranted and without merit.

Dated: December 29, 2016

Hurst Capital, LLLP